# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COMMUNITY LEGAL AID SOCIETY, INC., )
)
)
Plaintiff, )
)
v. )
)
ROBERT M. COUPE, solely in his )
capacity as Commissioner of the Delaware )
Department of Correction, )
)
Defendant. )

C.A. No. 15-688 (GMS)

**JURY TRIAL DEMANDED**

## OPENING BRIEF OF THE DELAWARE DEPARTMENT
## OF CORRECTION COMMISSIONER ROBERT M. COUPE
## IN SUPPORT OF HIS MOTION TO DISMISS

STATE OF DELAWARE
DEPARTMENT OF JUSTICE
Joseph C. Handlon (#3952)
Ryan P. Connell (#5423)
Deputy Attorneys General
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE 19801
(302) 577-8400

*Attorneys for Robert M. Coupe*

Dated: October 1, 2015

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................ iii

INTRODUCTION ......................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................... 2

FACTUAL BACKGROUND ......................................................................... 3

ARGUMENT ................................................................................................. 7

I.      CLASI LACKS STANDING TO BRING THIS ACTION AS THE SOLE PLAINTIFF.. 8

II.     THE COMPLAINT FAILS TO STATE A COGNIZABLE EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE ............................................. 14

III.    THE ELEVENTH AMENDMENT BARS THIS ACTION ............................ 18

CONCLUSION ............................................................................................. 20

## TABLE OF CITATIONS

### CASES

*Allen v. Wright,* 468 U.S. 737 (1984) ..................................................................................9

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)..........................................................................7, 8, 16

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees,* 19 F.3d 241 (5th Cir. 1994)........................................11

*Averill v. Celello,* 2013 WL 6513842 (D. Del. Dec. 11, 2013) ....................................17

*Bell v. Wolfish,* 441 U.S. 520 (1979) ................................................................................18

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..........................................................7, 8

*Brown v. Plata,* 563 U.S. 493 (2011) ...............................................................................20

*Community Legal Aid Society, Inc. v. Meconi,* 2002 WL 1466593 (Del. Ch. June 25, 2002)......12

*Constitution Party of Pa. v. Aichele,* 757 F.3d 347 (3d Cir. 2014) ............................7, 8

*Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.,* 675 F.3d 149 (2d Cir. 2012) ................................................................. 10, 11-12

*Doe v. Stincer,* 175 F.3d 879 (11th Cir. 1999) ................................................................11

*Edelman v. Jordan,* 415 U.S. 651 (1974) ........................................................................19

*Ex Parte Young,* 209 U.S. 123 (1908) ........................................................................18, 19

*Farmer v. Brennan,* 511 U.S. 825 (1990)................................................................14, 15, 16

*Ford v. Bd. of Managers of the New Jersey State Prison,* 407 F.2d 937 (3d Cir. 1969)...............15

*Gibson v. Lynch,* 652 F.2d 348 (3d Cir. 1981) ...............................................................15

*Gillis v. Litscher,* 568 F.3d 488 (7th Cir. 2006) .............................................................13

*Gray v. Creamer,* 465 F.2d 179 (3d Cir. 1972) ..............................................................15

*Griffin v. Gomez,* 741 F.3d 10 (9th Cir. 2014) ...............................................................15

*Griffin v. Vaughn,* 112 F.3d 703 (3d Cir. 1997) .............................................................15

*Hewitt v. Helms,* 459 U.S. 460 (1983) .............................................................................14

*Hohider v. United Parcel Service, Inc.,* 574 F.3d 169 (3d Cir. 2009)....................................12, 13

*Hunt v. Wash. State Apple Adver. Comm'n.,* 432 U.S. 333 (1977) ..............................9, 10, 11, 12

*Hutto v. Finney,* 437 U.S. 678 (1978)........................................................................13

*Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997)........................................19

*Jester v. Phelps,* 2011 WL 4948561 (D. Del. Oct. 17, 2011)........................................17

*Kingsley v. Hendrickson,* 135 S.Ct. 2466 (2015)........................................................16

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1997)....................................................8

*Mandelbrot v. Armstrong World Indus. Asbestos Personal Injury Settlement Trust,*
    2014 WL 4626505 (D. Del. Sept. 12, 2014).........................................................9

*Missouri Protection and Advocacy Services, Inc. v. Carnahan,* 499 F.3d 803 (8th Cir. 2007)....11

*Nelson v. Shuffmani,* 603 F.3d 439 (8th Cir. 2010).....................................................13

*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1983)............................20

*Protection & Advocacy, Inc. v. Murphy,* 1992 WL 59100 (N.D. Ill. Mar. 16, 1992) ..................11

*Rhodes v. Chapman,* 452 U.S. 337 (1981) .........................................................13, 14

*Silverstein v. Federal Bureau of Prisons,* 559 Fed. App'x 739 (10th Cir. 2014)...................14, 15

*Siwulec v. J.M. Adjustment Services, LLC,* 2012 WL 666649 (3d Cir. Mar. 1, 2012)...............7, 8

*Spruill v. Gillis,* 372 F.3d 218 (3d Cir. 2004)...............................................................17

*Steedley v. McBride,* 2014 WL 4461110 (D. Del. Sept. 9, 2014)...................................17

*Stones v. McDonald,* 2014 WL 26810 (D. Del. Jan. 2, 2014) .......................................17

*Tenn. Prot. and Advocacy, Inc. v. Bd. of Edu. Putnam Cnty., Tennessee,*
    24 F.Supp.2d 808 (M.D. Tenn. 1998)..........................................8, 9, 10, 11

*Thomas v. Rosemeyer,* 2006 WL 2918891 (3d Cir. Oct. 12, 2006)..............................15

*Thorpe v. Little,* 804 F.Supp.2d 174 (D. Del. 2011)...................................................17

*Turner v. Safley,* 482 U.S. 78 (1987).......................................................................18

*United Food & Comm. Workers Union Local 751 v. Brown Grp.,* 517 U.S. 544 (1996)...............9

*Victaulic Co. v. Tieman,* 499 F.3d 227 (3d Cir. 2007) ..................................................7

*Virginia Office for Protection and Advocacy v. Stewart,* 131 S.Ct. 1632 (2011) ..................18, 19

*Wharton v. Coupe,* C.A. No. 12-1240 LPS (Sept. 30, 2015)......................................12, 13

*Whitley v. Albers,* 475 U.S. 312 (1986) ...................................................................14

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)............................................................18

*Williams v. Armstrong*, 566 Fed. App'x 106 (3d Cir. 2014) ........................................................15


## STATUTES AND OTHER AUTHORITIES

U.S. CONST. AMEND. VIII ...........................................................................................*passim*

U.S. CONST. AMEND. XI .........................................................................................2, 18, 19, 20

Del. CONST. AMEND. art. 1, § 11..................................................................................2, 6

16 *Del. C.* Ch. 50 .....................................................................................................3

16 *Del. C.* Ch. 51 .....................................................................................................3

16 *Del. C.* §§ 5161 – 5162.............................................................................................3

16 *Del. C.* § 5161(b) ...................................................................................................3

16 *Del. C.* Ch. 55 .....................................................................................................3

18 *Del. C.* § 362(a)(1)(A) ............................................................................................20

Fed. R. Civ. P. 12(b)(1) .............................................................................................2, 7

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2, 7, 8

Fed. R. Civ. P. 23.................................................................................................12, 14

Fed. R. Civ. P. 23(a) ..............................................................................................12, 13

Fed. R. Civ. P. 23 (b)(2) .............................................................................................13

H.R.J. Res. 5, 148th Gen. Assemb., (DE 2015)...........................................................6, 7

## INTRODUCTION

At the outset, the DOC[1] emphasizes that it remains willing to work with CLASI and others who have raised issues regarding the mental health care of Delaware inmates and the extent to which mentally ill inmates are subjected to restrictive housing.  A cooperative effort to address those concerns, which commenced before this lawsuit, is the best way of achieving the goals seemingly sought by this litigation.  However, as currently drafted, the Complaint is simply too far reaching and vague and overly broad in its breadth.  The claims fail to account for the vast differences between the extent of the use of restrictive housing and also of the individual inmates and their mental health, as well as security, needs.  For the reasons discussed herein, the Complaint as currently framed must be dismissed.

* * *

By this lawsuit, CLASI attacks confinement decisions at any Delaware prison and the use of restrictive housing for any duration, for any purpose, for any inmate.  It attempts to usurp the broad discretion the Supreme Court affords prison officials in managing security needs and gives no consideration to the use of restrictive housing for classification, discipline, or protective custody, for even brief periods.  The Complaint challenges how Delaware houses its most violent and dangerous convicted criminals, yet fails to offer any specific solutions to what it claims is constitutionally deficient mental health care.  As currently framed, the Complaint seeks to end restrictive housing for any inmate, even someone who may be a serious threat to other inmates and officers.   The requested relief gives no consideration to individual circumstances of particular inmates.  The DOC denies that it is providing unconstitutional mental health treatment for its mentally ill population and the notion that the Commissioner, or anyone at DOC, is

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Complaint.

1

somehow deliberately indifferent to a significant risk of serious harm is unfounded and not supported by plausible facts.

Restrictive housing has never been ruled unconstitutional. Indeed, consistent with the Supreme Court's repeated admonitions of deference to prison officials in managing prisons and jails, the Third Circuit has rejected claims that extended periods of restrictive housing violate the Constitution. This lawsuit, which challenges the use of restrictive housing for any period of time, for any Delaware inmate, no matter how violent or dangerous the inmate may be, is far too reaching, vague and ambiguous to withstand the Court's rigorous pleading requirements.

Moreover, as CLASI is aware, the DOC is treating offenders and is currently addressing some of the criticisms that CLASI has alleged in the Complaint. Pursuant to a joint resolution of the Delaware General Assembly, the State is required to retain an independent examiner to study and make findings and recommendations (by this December) concerning the use of restrictive housing in Delaware prisons.

The Complaint must be dismissed for the following reasons: (1) CLASI lacks standing to bring the action solely on its behalf; (2) it fails to state a claim of deliberate indifference against Commissioner Coupe; and (3) the broad and vague relief sought against the State (through the Commissioner, who has been sued only in his official capacity) is barred by the Eleventh Amendment.

## NATURE AND STAGE OF THE PROCEEDINGS

CLASI filed the Complaint on August 6, 2015. It alleges broadly that DOC policies, practices and procedures violate the Eighth Amendment and Article I, Section 11 of the Delaware Constitution. This is the Commissioner's Opening Brief in support of his Motion to Dismiss, filed pursuant to Rules 12(b)(1) and (6).

## FACTUAL BACKGROUND

CLASI, a "private, non-profit law firm,"[2] asserts that it has been designated by the State of Delaware as a protection and advocacy (a "P&A") system and has been charged by the State with the duty of monitoring Delaware correctional facilities and investigating possible abuse or neglect of prisoners with mental illness.  Having brought suit in its own name, CLASI presumably believes it has associational standing to enforce the constitutional and statutory rights of all inmates with mental illnesses, regardless of whether those inmates have retained CLASI or otherwise consented to CLASI's representation.  Nonetheless, CLASI does *not* allege that it is a membership organization, that it has any members, or, alternatively, that it has constituents who exercise rights manifesting the indicia of membership.

Further, it does not appear that Delaware law expressly authorizes CLASI's suit.  The Delaware's Mental Health Patients' Bill of Rights, 16 *Del. C.* §§ 5161-5162 (the "Patients' Bill of Rights"), designates CLASI as the P&A for mental health patients under the Patients' Bill of Rights.  The authority granted to CLASI under this statute is limited to hospitals and residential centers under Title 16 of the Delaware Code.  *See* 16 *Del. C.* § 5161(b) (referring to patients in hospitals and residential centers admitted pursuant to Chapter 50, 51 or 55 of Title 16).  The Commissioner is unaware of any authority under state law for CLASI to bring this action solely in its name.

---

[2] *See* Compl. at 16; *see also* http://www.declasi.org/about-clasi/ (last visited September 29, 2015). According to its website, CLASI provides a wide range of free legal services to, among others, the indigent, disabled and older citizens. *Id.*; *see also* http://www.declasi.org/ (last visited September 29, 2015).  CLASI's "practice areas" include tenant rights, public benefits, domestic violence, immigration, consumer information, elder law, and disabilities law.  http://www.declasi.org/legal-topics/ (last visited September 29, 2015).

CLASI challenges, seemingly on behalf of all inmates with either a mental or serious mental illness, the use of any restrictive housing in Delaware's four level-five prisons.[3] CLASI's primary focus appears to be the JTVCC's SHU, which houses maximum security inmates who have been deemed a serious security risk. CLASI's primary complaint is that mentally ill inmates in the SHU (who have not been identified in the Complaint or named as plaintiffs) are kept locked in their cells (except for three hours per week) without access to adequate mental health services. Compl. at ¶ 4. The Complaint acknowledges, however, that the DOC months ago opened the Secured Transition Unit (the "STU")[4] within the SHU to house and treat maximum security inmates with serious mental illnesses. *Id.* It is unclear whether and to what extent CLASI is challenging the conditions of and treatment provided in the STU, which now houses all SHU inmates who have been diagnosed with a serious mental illness and who are willing to participate in the specialized mental health services offered in the STU. *See id.* (referring to "prisoners" being denied medical and mental health care, but not distinguishing between STU and SHU inmates).

CLASI acknowledges the extremely difficult challenges the State faces in housing and treating mentally ill inmates. The Complaint notes that 56% of Delaware prisoners have mental health problems. Compl. at ¶ 21. It notes that 100 out of 300 inmates in SHU are on the mental health roster, and of those, approximately 60 are diagnosed with a serious mental illness. *Id.* And some of those refuse to leave their cells even when permitted. Compl. at ¶ 30. While certainly taking issue with the level of treatment, the Complaint acknowledges mental health treatment is provided. *See, e.g.,* Compl. at ¶ 31 (noting that inmates at JTVCC receive

---

[3] The inconsistency in the Complaint regarding whether CLASI is pursuing claims on behalf of the mentally ill or the seriously mentally ill has serious practical implications. Those terms have significantly different meanings that, depending on which one is at issue, can drastically alter the scope of this case.
[4] Plaintiff refers to this unit as the Secured Treatment Unit. Compl. at par 4.

medication, see a certified nurse practitioner once every three months, and occasionally see a therapist.); ¶ 32 (noting that three times a week an employee of Connections Community Support Programs checks on the inmates).

Generalities and vagueness permeates the Complaint. For instance, "inmates" seeking help "are often" placed in the "naked room," (a room with a commode and mattress) and held for "varying lengths of time." Compl. at ¶¶ 32, 34. Speakers for in-person visits "frequently" malfunction. *Id.* at ¶ 38. "Some prisoners" refuse medications. *Id.* at ¶ 47. "Others" refuse to leave cells. *Id.* The Complaint alleges that inmates in restrictive housing cannot attend religious services, hold a job, or participate in programs, and have limited access to books, the telephone and visits. *Id.* at ¶ 36. The Complaint, however, acknowledges that these and other privileges increase with good behavior. Compl. at ¶ 39 (discussing Quality of Life Levels).

As with the complaints of mental health treatment, CLASI's complaints about DOC's policies and practices are equally general and vague. The Complaint alleges that DOC fails to take "adequate steps" to avoid placing seriously mentally ill inmates in solitary confinement (Compl. at ¶ 49) and that it fails to provide "mentally ill" inmates "sufficient contacts" with mental health professionals (Compl. at ¶ 51), though CLASI elsewhere acknowledges that DOC has transferred almost the entire population (50 of 60) of seriously mentally ill inmates to STU. Compl. at ¶ 4. CLASI asserts that "many prisoners" cannot conform their conduct because of their "illnesses." Compl. at ¶ 53. The Complaint appears to acknowledge that the DOC Policy Manual contains appropriate procedures regarding solitary confinement housing (*see* ¶ 54, 56), but then obliquely alleges that "DOC does not adhere to its policy…." Compl. at ¶¶ 55, 57.

The Complaint alleges in conclusory fashion that Commissioner Coupe is aware of a number of conditions and practices and that he is deliberately indifferent to alleged substantial

risk of serious harm to "those prisoners." Compl. at ¶ 62.  The Commissioner is alleged to have

the authority and ability to make numerous corrections to the alleged deficient practices and has

chosen not to (Compl. at ¶ 63-66), though, as acknowledged elsewhere in the Complaint, DOC

has created STU, moved nearly all seriously mentally ill inmates to STU and has other less

restrictive housing for mentally ill inmates, such as the Special Needs Unit ("SNU").  DOC also

facilitated CLASI's inmate interviews and review of mental health records.  *Id.* at ¶ 64.  There

are *no allegations* that Commissioner Coupe is actually aware that any particular inmate is at

serious risk of significant injury because of a practice or policy and has ignored that risk.

Recognizing that vague and general allegations fail to state a claim of an actual case and

controversy that the Court can redress, CLASI identifies six non-party, anonymous[5] exemplars,

inmates who are or were at some unspecified point housed in SHU.

The Complaint alleges that Commissioner Coupe violated the Eighth Amendment (Count

I) and the Delaware Constitution, Article I, Section 11 (Count II).  It seeks declaratory and

injunctive relief (and fees), but fails to request that the Commissioner be compelled to take any

particular action.  The Complaint does not allege that the Commissioner had personal

involvement with any inmate, including even the six anonymous exemplars, nor are there any

facts demonstrating that the Commissioner was subjectively aware of a risk of serious harm and

that he intentionally disregarded that risk.

Finally, absent from the Complaint is any acknowledgement that Delaware is currently

taking action to investigate and address the use of restrictive housing.  In May 2015, the

Delaware General Assembly passed House Joint Resolution No. 5 ("JR5"), commissioning an

---

[5] Following the filing of the Complaint, CLASI disclosed the identities of the exemplars to DOC on a confidential basis. If necessary, discovery will show that some or all of these exemplars are either no longer housed in the SHU, have been transferred to the STU, or have been offered and rejected housing and services in the STU.

independent expert to study and make findings and recommendations concerning the use of restrictive housing in Delaware correctional facilities.[6]   The independent expert is required to issue a detailed report with findings and recommendations for changes to Delaware law and/or DOC policy to the DOC, the House Corrections Committee and others by December 31, 2015. JR5 was signed by Governor Markell on September 3, 2015.  The House Corrections Committee and the DOC are currently engaged in procuring the expert required by JR5.

## ARGUMENT

A motion to dismiss brought under Rule 12(b)(1) for lack of standing is a jurisdictional challenge.  *Constitution Party of Pa v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  Standing challenges may be brought as a facial or factual challenge.  *Aichele*, 757 F.3d at 357.  As it sounds, a facial challenge considers the claims on their face only and the court applies the same standard it applies in considering a Rule 12(b)(6) motion; a factual attack allows the court to review matters beyond the pleadings in assessing standing.  *Id.*

While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, it must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Siwulec v. J.M. Adjustment Services, LLC*, 2012 WL 666649, at *2 (3d Cir. Mar. 1, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a plaintiff must allege facts that 'raise a right to relief above the speculative level....'"  *Siwulec*, at *2 (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)); *see also Twombly*, 550 U.S. at 555. "Accordingly, to satisfy the plausibility standard, the complaint must indicate that a defendant's liability is more than 'a sheer possibility.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949).  "Where a

---

[6] *See* http://legis.delaware.gov/LIS/LIS148.NSF/vwLegislation/HJR+5?open (last visited Sept. 10, 2015).

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

"Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than 'legal conclusions' or 'naked assertions.'" *Siwulec*, at *2 (quoting *Twombly*, 550 U.S. at 555, 557). "Such allegations are 'not entitled to the assumption of truth' and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). The Court must then "identify the 'nub of the ... complaint – the well-pleaded, nonconclusory factual allegation[s].'" *Id.* (citation omitted). Taking these allegations as true, the court must then determine whether the complaint states a plausible claim for relief. *Id.* The Complaint must be dismissed under these exacting standards.

## I.   CLASI LACKS STANDING TO BRING THIS ACTION AS THE SOLE PLAINTIFF.

In order to establish standing, the Plaintiff must satisfy the following three-part test:

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Constitution Party of Pa v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1997)). The requirement of an actual or threatened injury under Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing, but Congress may not grant standing outside the limits imposed by the

Constitution. *Tenn. Prot. and Advocacy, Inc. v. Bd. of Edu. Putnam Cnty., Tennessee*, 24

F.Supp.2d 808, 814 (M.D. Tenn. 1998) ("*Putnam Cnty.*").

    Courts are also generally bound by "prudential limitations" in the exercise of federal

jurisdiction. *Mandelbrot v. Armstrong World Indus. Asbestos Personal Injury Settlement Trust*,

2014 WL 4626505, at *2 (D. Del. Sept. 12, 2014). "Prudential limitations are 'judicially self-

imposed limits on the exercise of federal jurisdiction that may preclude a litigant's standing.'"

*Putnam County*, 24 F.Supp.2d at 813 (citation omitted). Those limitations include

> the general prohibition on a litigant's raising another person's legal
> rights, the rule barring adjudication of generalized grievances more
> appropriately addressed in the representative branches, and the
> requirement that a plaintiff's complaint fall within the zone of
> interest protected by the law invoked.

*Allen v. Wright*, 468 U.S. 737, 751 (1984).

    Notwithstanding these prudential limitations, certain membership organizations may have

associational standing, as established by *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S.

333 (1977). The Court in *Hunt* announced a three-part test for associational standing:

> an association has standing to bring suit on behalf of its members
> when: (a) its members would otherwise have standing to sue in
> their own right; (b) the interests it seeks to protect are germane to
> the organization's purpose; and (c) neither the claim asserted nor
> the relief requested requires the participation of individual
> members in the lawsuit.

*Hunt*, 432 U.S. at 343. The first two of these requirements are constitutional limitations, whereas

the third requirement is a prudential limitation that may be abrogated by Congress. *United Food*

*& Comm. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 557 (1996).

    As to the first element, the Court in *Hunt* held that the plaintiff commission – a state

agency charged by statute with the promotion and protection of the State's apple industry on

behalf of apple growers and dealers – was not a membership organization, but nonetheless

satisfied the first prong of associational standing because "'in a very real sense … the Commission represent[ed] the State's growers and dealers and provide[d] the means by which they express[ed] their collective views and protect[ed] their collective interests.'" *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012) (quoting *Hunt*). As noted by the Second Circuit, the *Hunt* Court relied upon the fact that apple growers and dealers alone elected the membership of the Commission, alone could serve on the Commission, alone financed its activities, including the cost of litigating, through assessments levied upon them. *Id.* Thus, while the Commission did not have "members" in the traditional sense, it nevertheless had constituents that possessed all indicia of membership. *Id.*

Relying upon *Hunt*, the court in *Disability Advocates, Inc.* reversed an injunction (which was granted after a five-week trial and years of litigation and independent court-ordered monitoring) on the basis that the contractor hired by the system under PAIMI lacked the indicia of a membership organization required by *Hunt*. *Id.* at 159-60. The court reasoned:

> DAI does not claim that its constituents have a sufficiently active affiliation with the organization. Tellingly, there is scant evidence in the record that the individuals with mental illness whom DAI purports to represent have the power to elect its directors, make budget decisions, or influence DAI's activities or litigation strategies. For instance, the record does not contain the contract between CQCAPD and DAI. Nor does it contain agendas, minutes, or other evidence regarding the quarterly meetings between DAI and CQCAPD's Advisory Council; names and descriptions of the members of the Advisory Council; or ways that individuals with mental illness convey information, requests, or inquiries to the Advisory Council. Finally, the record does not establish that DAI ever notified its 'constituents' or any of their legal guardians that it was filing this suit purportedly on their behalf.

*Id.* (citations omitted).

Other courts have likewise held that P&A systems must file suit on behalf of particular individuals to have standing. For instance, the court in *Putman Cnty.* addressed the ability of a

10

P&A to bring an action generally on behalf of disabled individuals under the Individuals with Disabilities Education Act ("IDEA") without naming specific plaintiffs. 24 F. Supp. 2d 808 (M.D. Tenn. 1998). The court observed that there is a "significant difference between a case in which a P&A group files suit on its own behalf though not claiming direct injury to itself, and a case in which a P&A group files in conjunction with or on behalf of an injured party." *Putnam Cnty.*, 24 F. Supp. 2d at 815-16. The court therefore held that the P&A lacked standing because it did not file on behalf of specific individuals and did not allege injury to itself. *Id.*; *see also Missouri Protection and Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803, 809-10 (8th Cir. 2007) (holding that P&A lacked standing because it failed to show that it had persons under guardianship orders were members of the P&A); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 255 (5th Cir. 1994) (holding that a P&A lacks organizational standing because the P&A bears no relationship to traditional membership groups because most of its clients are unable to participate in and guide the organization's efforts); *Protection & Advocacy, Inc. v. Murphy*, 1992 WL 59100 (N.D. Ill. Mar. 16, 1992) (dismissing P&A's suit under Medicaid program, even where the P&A later added two specific plaintiffs whose claims were moot or not ripe); *but see, e.g., Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) (upholding associational standing of P&A in ADA case).

CLASI lacks associational standing under *Hunt* because there are no allegations that CLASI is a membership organization or that it has constituents that possess the indicia of a membership organization. *A.R.C.*, 19 F.3d at 255. Unlike in *Hunt*, there are no allegations or other demonstration that any constituents of CLASI elect directors or members of CLASI, make budget decisions, influence CLASI's activities or litigation strategies, serve as board members on CLASI or finance CLASI's activities. *Hunt*, 432 U.S. at 344-45; *Disability Advocates, Inc. 675*

11

F.3d at 159-60. Indeed, it is highly unlikely that CLASI – a law firm – has mentally ill constituents that perform any of these membership functions.

There are also no allegations that meet the second prong of *Hunt*. There are no facts pled that demonstrate that a germane interest of CLASI is protecting prisoner rights. Indeed, CLASI's own website, while noting that disability law, generally, is one of its several practice areas, it says nothing about pursuing rights of the mentally ill inmates, prisoner rights or even civil rights.[7] There are certainly no allegations in the Complaint sufficient to support a finding that CLASI meets this second element, in addition to the first element, of *Hunt*.[8]

Upholding CLASI's standing would also result in an end-around critical protections afforded under Rule 23. Class certification requires a preliminary, "rigorous analysis" into the underlying merits of the action as part of the class-certification process. *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 176 (3d Cir. 2009); *see Wharton v. Coupe*, C.A. No. 12-1240 LPS (Sept. 30, 2015) (denying motion for class certification in prison over-stay action noting the lack of commonality of circumstances of each inmate and danger that certification could impute liability upon the DOC officials for actions of non-parties) (**Exhibit A**); Fed. R. Civ. P. 23(a). In *Hohider*, a proposed class of UPS employees sued under the ADA over a policy prohibiting disabled employees from returning to work with restrictions. The court certified the class and

---

[7] While not determinative, it is also worthy of note in considering CLASI's standing that over the last 45 years it appears that CLASI, with one exception, has filed suit strictly on behalf of parties and not in its own name. *See Community Legal Aid Society, Inc. v. Meconi*, 2002 WL 1466593, at *2 (Del. Ch. June 25, 2002). Critically, *Meconi* held that CLASI had standing, not because CLASI had Article III standing (naturally), but because the state statute expressly permitted suit to enforce the Patients' Bill of Rights by interested citizens (the definition of which includes organizations such as CLASI). *Id.* at *2. As discussed above, the Patients' Bill of Rights does not authorize CLASI to file suit to enforce rights of mentally ill in prisons. The state statute's definition of facilities *does not* include prisons.

[8] The Commissioner recognizes that this challenge to standing may involve factual issues beyond the Complaint that may need to be explored in limited discovery. However, it is prudent to raise the jurisdictional issue of standing at the pleading stage rather than waiting for potentially years of litigation (as occurred in *Disabilities Advocates, Inc., supra* p. 10).

the Third Circuit Reversed, holding that the facts of regarding employee's case were too distinct to justify class certification. The court noted that the determination of whether class members were "qualified" under the ADA was an assessment that was "too individualized and divergent with respect to th[e] class to warrant certification under Rule 23(a) and (b)(2)." *Id.* at 186; *see also Wharton*, at p. 8.

A finding that CLASI has standing to pursue rights on behalf of all mentally ill inmates would essentially certify a vague and undefined class of Delaware inmates with facts and circumstances equally if not vastly more divergent than the disabled UPS employees in *Hohider* and *Wharton*, and would do so without the required rigorous analysis of the merits of the case. Determining whether prison officials have violated the Eighth Amendment rights of an inmate necessarily requires a fact-intensive inquiry under constitutional standards. *Nelson v. Shuffmani*, 603 F.3d 439, 448 (8th Cir. 2010); *Gillis* v. *Litscher,* 568 F.3d 488, 493 (7th Cir. 2006). The Complaint gives this no consideration; it blanketly takes issue with the use of restrictive housing in *all of Delaware's level 5 prisons* for inmates with not only serious mental illnesses, but seemingly any mental illnesses or even those *at risk of* a mental illness. It fails to specify how long a period of isolation could be considered unconstitutional or why an inmate might be required to be in restrictive housing. It completely fails to consider inmates who, for example, are classified to SHU for security reasons. *See Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981) (one element for cruel and unusual punishment is whether the confinement is grossly disproportionate to the severity of the crime warranting punishment). Not all inmates serving time in restrictive housing served identical periods of time. *See Hutto v. Finney*, 437 U.S. 678, 687 (1978) (noting length of time as a consideration in the Eighth Amendment inquiry). Not all inmates in SHU are classified to SHU; some are serving time in restrictive housing for

administrative or disciplinary reasons.  And obviously DOC has a duty to protect inmates from other violent inmates.  *Farmer v. Brennan* 511 U.S. 825 (1990); *see Silverstein v. Federal Bureau of Prisons*, 559 Fed. App'x 739 (10th Cir. 2014) (considering, among other things, in a challenge to the use of solitary confinement, the fact that *while in prison* plaintiff murdered two inmates and a correction officer).

Mental illnesses are many and varied, as are the reasons for their classification to maximum security.  Each mentally ill inmate has a unique diagnosis and requires different treatment.  Treatment plans may or may not require individualized therapy sessions.  Most if not all of the seriously mentally ill inmates in the SHU are housed and are receiving services in the STU.  Inmates may even chose to remain in SHU.  Certifying a broad and seemingly limitless class of Delaware inmates deprives the State of the protections of Rule 23.  Accordingly, and as required by the *Hobbs* factors, the Complaint should be dismissed for lack of standing.

## II.   THE COMPLAINT FAILS TO STATE A COGNIZABLE EIGHTH AMENDMENT CLAIM FOR DELIBERATE INDIFFERENCE.

The Eighth Amendment bars, among other things, the "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Among the unnecessary and wanton infliction of pain are punishments that are "totally without penological justification."  *Rhodes*, 452 U.S. at 346.  Transferring inmates to less amenable and more restrictive quarters for nonpunitive reasons is "well within the terms of confinement ordinarily contemplated by a prison sentence."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  "Administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt*, 459 U.S. at 468.

The Third Circuit has held that solitary confinement by itself does not violate the Eighth Amendment[9] and has upheld fairly significant terms in restrictive housing. *Williams v. Armstrong*, 566 Fed. App'x 106, 109 (3d Cir. 2014) (112 days in restrictive housing unit failed to state a claim); *Thomas v. Rosemeyer*, 2006 WL 2918891, at *1 (3d Cir. Oct. 12, 2006) (270 days in disciplinary confinement not a significant and atypical hardship); *Griffin v. Vaughn,* 112 F.3d 703, 708 (3d Cir.1997) (confinement in administrative custody for fifteen months not atypical or significant deprivation); *Gibson v. Lynch*, 652 F.2d 348, 350-52 (3d Cir. 1981) (four months in maximum security isolation). Indeed, courts have held, depending on particular circumstances, that conditions of extended periods of extreme isolation even where the inmate has a mental illness do not violate the Eighth Amendment. *See Silverstein*, 559 Fed. App'x at 760-64 (rejecting an Eighth Amendment challenge under to 30 years in solitary confinement for gang leader who killed three people in prison); *Griffin v. Gomez*, 741 F.3d 10 (9th Cir. 2014) (rejecting a challenge to a gang member's term of 44 years in prison, mostly spent in SHU). Obviously prison officials have a duty to protect other inmates. *See Griffin*, 741 F.3d at 21 (noting plaintiff is "not California's only prisoner").

Whether the Complaint states a claim does not simply involve an analysis of general conditions of restrictive housing confinement. CLASI has alleged that Coupe is deliberately indifferent to a significant risk of a known and serious harm. The Court in *Farmer* held that "deliberate indifference" means that a prison official cannot be held liable unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan* 511 U.S. 825, 838 (1990). The

---

[9] *Gray v. Creamer*, 465 F.2d 179, 187 (3d Cir. 1972); *Ford v. Bd. of Managers of the New Jersey State Prison*, 407 F.2d 937, 940 (3d Cir. 1969).

Eighth Amendment does not outlaw cruel and unusual "conditions," but rather cruel and unusual punishments. *Id.* An objective standard does not apply.[10] The Court held in *Farmer* "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.*

CLASI is required to plead with plausible facts, not only that the conditions in restrictive housing are particularly harsh, but also that (1) a particular inmate is at "substantial risk of serious harm" and (2) that Commissioner Coupe is subjectively aware of that substantial risk and has completely ignored it. Because the Complaint relies on generalities and fails to identify a single inmate-plaintiff, CLASI relies upon six anonymous exemplars. As to the first element, the Complaint fails to allege sufficient facts demonstrating that the exemplars are at substantial risk of serious harm because of their confinement in SHU. Indeed, two inmates apparently are not currently housed in SHU and some of those that remain are in the STU. Mostly, CLASI alleges in conclusory fashion that housing in solitary confinement has in some instances "exacerbated" a mental illness. These allegations fail to state sufficient facts demonstrating that the conditions of SHU plausibly posed a serious risk of harm to the six exemplars.

With respect to the second element, CLASI has not alleged facts demonstrating that Commissioner Coupe had personal involvement with any particular SHU inmate, including the six exemplars, regarding their mental health care or otherwise. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (upholding dismissal for failure to allege personal involvement of Ashcroft and Mueller). While CLASI alleges that some – but not all – of the exemplars filed grievances or

---

[10] The Court recently held that an objective standard applies to use of force Eighth Amendment claims filed by pretrial detainees. *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015). Thus, another distinction unaccounted for is whether a completely different Eighth Amendment standard applies to pretrial detainees that may be subjected to restrictive housing.

complained to other unidentified officers, they provide no details on what was grieved or whether any of those grievances or complaints were brought to Commissioner Coupe's attention.

Moreover, even if facts were specifically alleged against the Commissioner, ordinarily, DOC employees and officials can justifiably rely on medical and mental health professionals (such as Connections) in providing inmates with constitutionally required medical and mental health care. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."); *Stones v. McDonald*, 2014 WL 26810, at *8 (D. Del Jan. 2, 2014) ("It is well-established that a non-medical prison staff member may not be considered 'deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'"). The Court routinely dismisses DOC officials from medical claim cases filed by *pro se* inmates (who, unlike represented parties, receive significant leeway in pleadings). *See, e.g., Steedley v. McBride*, 2014 WL 4461110 (D. Del. Sept. 9, 2014) (dismissing DOC official who denied medical grievance); *Averill v. Celello*, 2013 WL 6513842, at *4 (D. Del. Dec. 11, 2013) (dismissing DOC officials even where the official is aware of a denial of a medical grievance); *Thorpe v. Little*, 804 F.Supp.2d 174 (D. Del. 2011) (dismissing deliberate indifference claims as frivolous where there were no allegations that prison officials knew or had reason to know that medical staff were not treating the plaintiff); *Jester v. Phelps*, 2011 WL 4948561, at *2 (D. Del. Oct. 17, 2011) (dismissing medical claim against warden). There is no reason why this same deference is not appropriate here. The Complaint fails to state a deliberate indifference claim against Commissioner Coupe and should therefore be dismissed.

17

III.    **THE ELEVENTH AMENDMENT BARS THIS ACTION.**

This lawsuit raises serious Eleventh Amendment concerns. The judiciary is ill equipped to deal with the increasingly urgent problems of prison administration and reform. *Turner v. Safley*, 482 U.S. 78, 84 (1987). The problems of America's prisons are "complex and intractable" and "are not readily susceptible of resolution by decree." *Turner*, 482 U.S. at 84.

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have … additional reason to accord deference to the appropriate prison authorities.

*Id.* at 84-85. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the restrained constitutional rights…." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* "Prison administrators [] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547.

Under limited circumstances, prospective claims against state officials in their *individual* capacities for injunctive relief may be brought to enjoin the violation of a federal right. *See Ex parte Young*, 209 U.S. 123 (1908).[11] The Court in *Young* explained that because an unconstitutional legislative enactment is void, a state official who seeks to enforce it is stripped of his official or representative character and subjected to the consequences of *his action*.

---

[11] Commissioner Coupe is the only defendant and is sued solely in his official capacity. Accordingly, this lawsuit is admittedly one against the State and not one against an individual official seeking to prevent him from violating a federal law. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

*Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011) (discussing *Young*, 209 U.S. at 159-60)). The Court recently noted the "fiction" of *Young* is limited to that precise situation, and does not apply when the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration. *Stewart*, 131 S.Ct. at 1638. Thus, the Court cautioned that the *Young* doctrine must be policed because to do otherwise would be to adhere to an empty formalism. *Id.* at 1639. *See also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 269 (1997) (stressing the "Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction."). The Court stressed that courts examine the effect of the relief sought. *Stewart*, 131 S.Ct. at 1638; *see also Edelman v. Jordan*, 415 U.S. 651 (1974).

Although the Eleventh Amendment does not generally bar claims against individual state officers for prospective relief to prevent violation of a federal right, it is equally true that Eleventh Amendment cannot be avoided by simply seeking prospective relief. To do otherwise, would be to adhere to the empty formalism the Court in *Stewart* made clear should be avoided. Here, unlike the facts of *Young* and *Stewart*, where plaintiffs were seeking to prevent an official from taking certain action that arguably violated federal law, CLASI is seeking affirmative, mandatory injunctive and declaratory relief relating to how the State of Delaware houses its most dangerous and problematic offenders. CLASI does not allege – as it cannot – that the use of restrictive housing violates clearly established constitutional rights. CLASI does not – as it cannot – allege that the Eighth Amendment requires the particular level of mental health care for mentally ill inmates that it feels is appropriate. This case does not involve a claim seeking to prevent the violation of a clear federal right. In addition to involving highly fact-specific inquiries for each individual inmate with a mental illness who may be serving some portion of

his sentence in restrictive housing, any requested remedies[12] would necessarily significantly infringe on the sovereignty of the State by dictating how DOC handles its most serious and difficult offenders.  The Complaint raises serious Eleventh Amendment concerns and should be dismissed for this additional reason.[13]

## CONCLUSION

The Complaint must be dismissed because (1) CLASI lacks standing, (2) the Complaint fails to state a claim, and (3) the requested relief runs afoul of the Eleventh Amendment.    For these reasons, Commissioner Coupe respectfully requests that the Court dismiss the Complaint and grant such further relief as the Court may deem just and appropriate.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Joseph C. Handlon
Joseph C. Handlon (#3952)
Ryan P. Connell (#5423)
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE  19801
(302) 577-8400

Dated: October 1, 2015

*Attorneys for Commissioner Robert M. Coupe*

---

[12] It is worth noting that the Prison Litigation Reform Act limits the court's ability to provide prospective relief.  As recently summarized, the PLRA provides: "'[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs"; that such relief must be narrowly drawn, [and] exten[d] no further than necessary to correct the violation of the Federal right"; and that it must be "the least intrusive means necessary to correct the violation of the Federal right.'"  *Brown v. Platta*, 563 U.S. 493, 131 S.Ct. 1910, 1951 (2011) (Scalia, dissenting) (quoting 18 U.S.C. § 362(a)(1)(A) (alterations in original)).

[13] At a minimum, Count II must be dismissed.  An action cannot be brought in federal court for prospective relief to enjoin an official from violating state law.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 112-16 (1983).  Accordingly, the claim under the Delaware Constitution is clearly barred by the Eleventh Amendment. *Id.*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PHILIP A. WHARTON, JOSEPH  :
ROUNDTREE, JAMES MADDOX,  :
and LAMAR CORREA,     :
           :
   Plaintiffs,     :
           :
 v.         :   C.A. No. 12-1240-LPS
           :
ROBERT COUPE, CARL C.   :
DANBERG, and REBECCA   :
MCBRIDE,       :
           :
   Defendants.    :

---

Stephen A. Hampton, GRADY & HAMPTON, L.L.C., Dover, DE

  Attorney for Plaintiffs.

Michael F. McTaggart, Scott W. Perkins, Delaware Department of Justice, Wilmington, DE

  Attorneys for Defendants.

**<u>MEMORANDUM OPINION</u>**

September 30, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are (1) a Motion for Class Certification, filed by Plaintiffs

Philip A. Wharton, Joseph Roundtree, James Maddox, and Lamar Correa ("Plaintiffs") (D.I. 58);

(2) a Motion to Strike Certain Members of the Purported Class ("Motion to Strike"), filed by

Defendants Robert Coupe,[1] Carl C. Danberg, and Rebecca McBride ("Defendants")[2] (D.I. 59);

and (3) a Motion for Summary Judgment, filed by Defendants (D.I. 74).  For the reasons

discussed below, the Court will deny Plaintiffs' Motion for Class Certification and grant

Defendants' Motion for Summary Judgment.  The Court will deny as moot Defendants' Motion

to Strike.

## BACKGROUND

Plaintiffs are individuals who have spent time in the custody of the Delaware Department

of Correction ("DDOC").  (*See* D.I. 64 at 1)  Plaintiffs filed this action on behalf of themselves

and "all others similarly situated," alleging injury resulting from "the practice of the [DDOC] of

over-detaining inmates and by the Defendants' deliberate indifference to the effect of the DDOC

practice of over-detention on the rights of inmates."  (D.I. 1 at 1; D.I. 64 at 1)

Plaintiffs seek injunctive relief and damages on behalf of themselves and their proposed

class of "past, current, or future Delaware inmates" pursuant to 42 U.S.C. § 1983, Fed. R. Civ. P.

---

[1] Pursuant to an agreement by the parties, the Court ordered that "[c]urrent Commissioner of the Delaware Department of Correction ('DDOC') Robert Coupe is substituted only as a defendant for former Commissioner Carl Danberg for the purpose of Plaintiffs' claims seeking injunctive relief against the Commissioner of the DDOC.  Defendant Danberg remains a defendant with respect to the legal claims raised against him by Plaintiffs."  (D.I. 88 at 2)

[2] All claims against former Defendant Cathy Escherich were dismissed; she is no longer a party to this action.  (*See* D.I. 88 at 1)

23, and the Eighth and Fourteenth Amendments.[3]  (D.I. 77 at 1)  Plaintiffs also allege violations

of 11 *Del. C.* §§ 2104-2105.  (*See* D.I. 64 at 20-21, 23; D.I. 83 at 2)  Plaintiffs define the

proposed class as follows:

> (a) Each person who has been, is, or in the future will be
> incarcerated in any Delaware prison from October 1, 2008,
> forward; and (b) who was not released, or, in the future, will be
> released within 12 hours of the time that a court order has been
> forwarded to [Central Offender Records ("COR")] releasing the
> person, or is not released by midnight of the day his or her sentence
> has ended.

(D.I. 77 at 1)  COR is a division of the DDOC that is "primarily responsible for calculating

offenders' sentences and release dates.  This unit houses and controls all active and inactive

institutional and probation/parole offender records."  (*See* D.I. 64 at 7)  "[T]he general activities

at COR include calculating offender sentences and preparing releases as ordered by the Court."

(*Id.*)

Defendants are current or former officials at the DDOC or COR.  Defendant Robert

Coupe is the current Commissioner of the DDOC.  (D.I. 88 at 2)  Defendant Carl C. Danberg was

Commissioner of the DDOC from the beginning of the alleged class period (October 1, 2008)

through "early 2013."  (*See* D.I. 64 at 2; D.I. 75 at 4)  Defendant Rebecca McBride is the current

Director of COR.  (D.I. 75 at 4-5)

According to Plaintiffs, "[a]n inmate or detainee who has had his bail posted, had a judge

order unsecured bail, or had a judge order that they be released without bail, still cannot be

released until the judicial order has been processed by COR.  Release orders from the Courts are

---

[3] Plaintiffs seek class certification pursuant to Rules 23(b)(2) and 23(b)(3).  (D.I. 84 at 5-
7)  Plaintiffs previously asserted claims under the Fourth and Fifth Amendments but
subsequently dropped these claims.  (*See* D.I. 83 at 2; 88 at 1)

transmitted to COR by fax machine." Subsequently, "a COR employee will fill out a check list

on a computer screen to determine whether any reason remains to continue to hold the offender

in custody." (*Id.*)

> If all of the checklist information is satisfactory, the COR
> employee checks off the appropriate preprinted instructions to the
> receiving room staff to do such things as verify the identity of the
> inmate by photograph, return the inmate's property, and have the
> inmate sign any bail or bond papers that need to be signed prior to
> releasing the inmate. A similar checklist exists for an inmate or
> detainee for whom the reason for the incarceration has expired.
> However, that checklist also requires the COR employee to review
> the current active legal section to ensure the accuracy of sentence
> calculation and release date.

(*Id.* at 7-8)

Plaintiffs allege various deficiencies at COR, including (1) COR is only open during

certain hours (limiting the responsiveness of COR to releases received after-hours), (2) COR is

inadequately staffed, (3) COR employees "frequently den[y] receiving . . . release orders,"

(4) COR employees are frequently unresponsive to phone calls by bail bondsmen, family and

friends of inmates, or even the inmates themselves, who are detained past their release dates or

past the dates when their sentences expire, and (5) COR frequently delays processing release

orders for more than 12 hours. (D.I. 64 at 8-11) Defendants dispute the aforementioned

allegations. (*See generally* D.I. 75, 81)

## LEGAL STANDARDS

### I.   Class Certification

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis,

that the prerequisites' of [Federal] Rule [of Civil Procedure] 23 are met." *In re Hydrogen*

*Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)).   Pursuant to Rule 23(a), the Court may certify a class only if:

> (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact common to the
> class; (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests
> of the class.

In addition to satisfying the requirements of Rule 23(a), a party seeking class certification

must satisfy one of Rule 23(b)'s additional requirements.  *See Warfarin Sodium Antitrust Litig.*,

391 F.3d 516, 527 (3d Cir. 2004) ("[P]arties seeking class certification must show that the action

is maintainable under Rule 23(b)(1), (2), or (3) . . . .").  Plaintiffs here seek certification under

Rule 23(b)(2) and 23(b)(3).  (D.I. 84 at 4)  Certification under Rule 23(b)(2) is permissible where

"the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

the class as a whole." Fed. R. Civ. P. 23(b)(2).  Certification under Rule 23(b)(3) is permissible

where "the court finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3).

## II.   **Summary Judgment**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An assertion that a fact cannot be – or,

alternatively, is – genuinely disputed must be supported either by citing to "particular parts of

materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials," or by "showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the

moving party has carried its burden, the nonmovant must then "come forward with specific facts

showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation

marks omitted).  The Court will "draw all reasonable inferences in favor of the nonmoving party,

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson

Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted).  However, the "mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is

genuine only where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## DISCUSSION

I.   **Plaintiffs' Motion for Class Certification**

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 2551 (emphasis in original).

"The crux of this case is commonality – the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Id.* at 2550-51 (quoting Rule 23(a)(2)). Plaintiffs' claims "must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551.

Plaintiffs have failed to prove sufficient commonality among the claims of their proposed class members. Defendants argue, and Plaintiffs do not dispute, that at least some of the alleged over-detentions were caused by ***court*** errors or delays. (*See* D.I. 75 at 7-10; D.I. 77 at 17) For example, release papers for Plaintiff Joseph Roundtree were, according to Defendants (and without dispute from Plaintiffs), processed "promptly" upon receiving them, although "Family Court in New Castle may have delayed in sending" the release papers. (*See* D.I. 75 at 7)

Because Plaintiffs appear to concede that some of the alleged over-detentions were caused by court errors (*see* D.I. 71 at 7) (arguing court errors could be minimized, but not necessarily eliminated), rather than errors that could have been controlled or prevented by personnel at the DDOC, it would be improper to certify a class of every inmate who has been or will be over-detained for more than 12 hours past a release date or past midnight of their sentence terminations. Plaintiffs are suing only DDOC officials in this case. If the Court were to certify Plaintiffs' proposed class, and if the proposed class were to prevail on the merits, it would impute liability to Defendants for actions of non-parties – actions that Defendants had no control over. Thus, there is no "common contention" for Plaintiffs' proposed class, the truth or falsity of which would "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

Because Plaintiffs have failed to meet the commonality requirement of Rule 23(a), the Court will deny Plaintiffs' Motion for Class Certification (D.I. 58). In light of this ruling, the Court will deny as moot Defendants' Motion to Strike Certain Members of the Purported Class

7

(D.I. 59).

## II.   Defendants' Motion for Summary Judgment

### A.   Sovereign Immunity

Defendants contend that the Eleventh Amendment bars Plaintiffs' claims against

Defendants in their official capacities.  (D.I. 75 at 14-15)  The Eleventh Amendment forbids suits

in federal courts against a state absent "unequivocal indication that the State intends to consent to

federal jurisdiction." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985).

Consistent with the Eleventh Amendment, the doctrine of sovereign immunity protects state

officials from liability if the suit is such that "the state is the real, substantial party in interest."

*Pennhurst State School & Hosp. v. Halder*, 465 U.S. 89, 101 (1984); *see also Hawaii v. Gordon*,

373 U.S. 57, 58 (1963) ("[R]elief sought nominally against an [official] is in fact against the

sovereign if the decree would operate against the latter.").  Plaintiffs specified in their Amended

Complaint that "[a]ll Defendants are sued in their individual *and official* capacities."  (*See* D.I.

64 at 23) (emphasis added)  To the extent Plaintiffs are suing Defendants in their official

capacities, the Court determines that such claims are barred by the doctrine of sovereign

immunity.

### B.   Qualified Immunity

Defendants also contend that Plaintiffs are barred from recovering damages by the

doctrine of qualified immunity.  (*See* D.I. 75 at 2)

> Qualified immunity shields government officials from civil
> damages liability unless the official violated a statutory or
> constitutional right that was clearly established at the time of the
> challenged conduct.  To be clearly established, a right must be
> sufficiently clear that every reasonable official would have

8

> understood that what he is doing violates that right. When properly
> applied, qualified immunity protects all but the plainly incompetent
> or those who knowingly violate the law. We do not require a case
> directly on point, but existing precedent must have placed the
> statutory or constitutional question beyond debate.

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal citations, brackets, and quotation marks

omitted).

Defendants contend that there is no clearly established right to be released within a

specific period of time, let alone the 12-hour period proposed by Plaintiffs. (D.I. 75 at 16)

Plaintiffs respond by citing analysis from a District Court's opinion, *Banks v. York*, 515 F. Supp.

2d 89, 115 (D.D.C. 2007), for the proposition that "the law regarding over-detention and Section

1983 liability based on supervisory inaction was clearly established by early 2006" and that

"there is . . . a substantial body of law recognizing that over-detention violates the Constitution."

*Id.* (internal quotation marks omitted; collecting cases involving over-detention).[4]

Because the Court will resolve Defendants' summary judgment motion on other grounds,

discussed *infra*, the Court need not determine whether Plaintiffs have proven that there is a

clearly established right for prisoners to be released within 12 hours of court orders or by

midnight on the date their sentences terminate.

### C.   Plaintiffs' Claims Under 11 *Del. C.* §§ 2104-2105

Plaintiffs allege violations of 11 *Del. C.* §§ 2104-2105. (*See* D.I. 64 at 20-21, 23; D.I. 83

at 2) These code sections address the duties of Delaware State Courts, not DDOC officials. *See*

---

[4]*Banks* resolved a motion to dismiss, rather than a motion for summary judgment, and did
not address potential violations in light of a complete factual record. Moreover, the Court in
*Banks* gave weight to the fact that the District of Columbia -- the Defendant in the *Banks* case --
had a history of over-detention violations, including a series of "injunctions and settlement
agreements." *Id.* at 115. Plaintiffs have pointed to no similar history in Delaware.

*generally* 11 *Del. C.* §§ 2104-2105; *see also* 11 *Del. C.* § 2101 ("Purposes of this chapter") ("It is

the purpose of this chapter to reform the system of bail *in the various courts of this State* and to

empower and equip *the courts* to utilize a system of personal recognizance or an unsecured

personal appearance bond . . . pending a final determination *of the court* . . . .") (emphasis

added).  These Sections do not set out any duties of DDOC officials.  Therefore, the Court will

grant summary judgment in favor of Defendants as to Plaintiffs' claims under §§ 2104 or 2105,

since Defendants are being sued in their capacities as DDOC officials.[5]

### D.     Plaintiffs' Fourteenth Amendment Claims

Plaintiffs assert claims under both the Eighth and Fourteenth Amendments.  However,

Plaintiffs do not cite any case law for the proposition that they may bring claims under both

Amendments challenging the same conduct.  Plaintiffs' claims concern their conditions of

confinement and alleged failures by Defendants to ensure timely release.  As such, the claims fit

squarely within the Third Circuit's over-detention and Eighth Amendment analysis.  *See*

*generally Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).  Plaintiffs' proposed class, quoted

above, includes prisoners who have been or will be over-detained in prison; it is not directed at

individuals who have only suffered more generalized deprivations of liberty that might be

addressed under a Fourteenth Amendment analysis.  In similar circumstances, the Third Circuit

has applied the "more-specific-provision rule" to hold that Fourteenth Amendment claims need

not be addressed separately from Eighth Amendment claims.  *See Betts v. New Castle Youth Dev.*

*Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010) ("Because these allegations fit squarely within the Eighth

---

[5] Danberg is currently a judge on the Delaware Court of Common Pleas, a position he has
held since early 2013.  (*See* D.I. 75 at 4)

Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses [Plaintiff]'s substantive due process claims."). For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' Fourteenth Amendment claims.[6]

### E.   <u>Plaintiffs' Eighth Amendment Claims</u>

Section 1983 provides a cause of action against every person who, under color of state law, "subjects, or causes to be subjected," another person to a deprivation of a federally protected right. 42 U.S.C. § 1983.

> It is well-recognized that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Rather, state actors are liable only for their own unconstitutional conduct. With this principle in mind, we have previously identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm. Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. "Failure to" claims – failure to train, failure to discipline, or, as is the case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

---

[6] Plaintiffs contend that "[b]y continuing to allow DDOC employees, including COR employees[,] to refuse to respond to inmate requests for paperwork concerning their over-detention, Defendants have denied, and continue to deny[,] Plaintiffs' access to the courts and to deny [sic] Plaintiffs' due process, in violation of their rights under the Fourteenth Amendment." (D.I. 64 at 25) The Court finds that, while this may appear to be a standalone claim under the Fourteenth Amendment, Plaintiffs' allegations clearly focus on prisoners who have been over-detained, regardless of *why* such prisoners were over-detained (for example, because of insufficient responsiveness to inmate requests). Again, then, by application of the more-specific-provision rule, the Court will dismiss Plaintiffs' Fourteenth Amendment claims.

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014) *rev'd on other grounds sub*

*nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (internal citations, brackets, and quotation marks

omitted). In this case, Plaintiffs allege that Defendants' conduct falls under the first of the

abovementioned categories of liability (policy or practice liability). (*See generally* D.I. 64)

Plaintiffs have not alleged that Defendants are liable under the second category.

Under the applicable Eighth Amendment analysis, Plaintiffs' burden is to demonstrate

that "(1) a prison official had knowledge of the prisoner's problem and thus of the risk that

unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or

took only ineffectual action under the circumstances, indicating that his response to the problem

was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection

between the official's response to the problem and the unjustified detention." *Montanez v.*

*Thompson*, 603 F.3d 243, 252 (3d Cir. 2010), *as amended* (May 25, 2010).

With respect to the first requirement from *Montanez*, the Court cannot say at this time

that no reasonable jury could find that Defendants had knowledge of the over-detention problem

and the risk that unwarranted punishment was being inflicted. There are genuine disputes of

material fact as to whether Defendants were aware of what might be found to be general

disorganization and incompetence of DDOC personnel and whether Defendants were aware of a

significant risk that unwarranted punishment might be inflicted on prisoners. Thus, even though

Plaintiffs have failed to tie Defendants' awareness of these problems to any specific policies or

actions of Defendants, Plaintiffs have adduced evidence from which a reasonable jury could find

that Plaintiffs have met the first requirement.

Regarding the second requirement from *Montanez* – deliberate indifference – the Court

determines that no reasonable factfinder could find that Defendants were deliberately indifferent

to the risk of Plaintiffs' over-detention. Plaintiffs make a series of vague allegations against

Danberg[7] and McBride, arguing that each of them knew about the general problem of over-

detention but did nothing about it. (*See generally* D.I. 64 at 18-20, 22-26)  Even assuming that

existing policies at the DDOC created an unreasonable risk of Eighth Amendment injury, there is

insufficient evidence in the record from which a reasonable factfinder could conclude that

Defendants were *indifferent* to that risk.  To the contrary, the record shows that each of the

Defendants worked to improve the DDOC and COR to address over-detention issues.

As noted in Plaintiffs' own submissions, former Commissioner Danberg was praised as

being "the first member of [former Governor] Minner['s] administration to ever step up and

accept responsibility for a problem [related to erroneous prisoner releases], acknowledging it

exists and telling us what he is trying to do to fix it." (D.I. 61-3 at PA184)  The undisputed

record shows that Danberg created COR with an eye toward improving prisoner release

processes:

> [Danberg] coordinated efforts with the bureau chief and
> Cathy Escherich and the union relating to the business change,
> because it was a huge business change for the department in the
> centralization of records.  We met with legislators in discussion
> with the centralization of records, chief justices from the different
> courts.  So he played a pretty active role in forming discussions and
> communications and coordinating those through the union, which
> central offender records staff are a part of.
>
> . . .

---

[7]For purposes of Plaintiffs' request for injunctive relief, the Court will interpret the
general allegations against Danberg discussed hereinafter as being directed to Coupe, who is the
current Commissioner of the DDOC. (*See* D.I. 88 at 2)

> The centralization of records was initiated in order to
> centralize our business practices so that we were uniform and
> consistent in getting the calculations done, releases done, the legal
> processes done, and that the actual process procedure would be
> handled in a uniform manner.

(*See* McBride Deposition, D.I. 60-1 at 246-47)  These are not the actions of someone who is

"deliberately indifferent" to a problem.  On the record before the Court, one can only conclude

that Danberg worked to address over-detention issues, and that he was not deliberately indifferent

to them.

Likewise, Plaintiffs have produced no evidence indicating that McBride is or was

deliberately indifferent to the over-detention problem.  As she stated at her deposition – and

without dispute from Plaintiffs – COR processes between 16,000 and 18,000 releases a year.

(D.I. 60-1 at 249)  "The administration of a system of punishment entails an unavoidable risk of

error.  In the case of punishment through imprisonment, those errors may result in harms to

inmates.  Elimination of the risk of error in many instances would be either literally impossible or

unfeasible because prohibitively costly."  *Sample*, 885 F.2d 1099, 1108 (3d Cir. 1989).  Given

the number of releases handled by COR each year, it is unsurprising (though of course

unfortunate) that errors occur and that prisoners are sometimes over-detained.  Evidence that

some incidents of over-detention occurred is not sufficient, by itself, to show that McBride was

deliberately indifferent to such incidents.  To the contrary, McBride demonstrated throughout her

deposition that she was intimately familiar with COR's procedures, including training procedures

intended to improve handling of prisoner releases, and she actively worked to improve processes

at COR to prevent and address problems of over-detention.  (*See, e.g.*, D.I. 60-1 at 239, 248-52)

Regarding current Commissioner Coupe, Plaintiffs have adduced no evidence whatsoever

14

suggesting that he is or was deliberately indifferent to the over-detention problem. In fact, the only reference to Coupe in Plaintiffs' summary judgment brief shows that Coupe was *not* deliberately indifferent to the over-detention problem. (*See* D.I. 77 at 13) ("In 2013, Bureau Chief Kim Wheatley was pushed by Commissioner Coupe to have COR form a 'special unit' to speed up the daily bail releases.") As with the other Defendants, the record supports only a finding that Coupe was trying to improve the DDOC, and COR specifically. Thus, the Court will grant summary judgment in favor of Defendants in light of Plaintiffs' failure to produce evidence of deliberate indifference.

Regarding the third requirement from *Montanez*, and as an independent basis for granting summary judgment in Defendants' favor, the Court finds that Plaintiffs have pointed to no causal connection between any actions or policies attributable to Defendants and the harm suffered by Plaintiffs. Plaintiffs point to COR's hours of operation (*see* D.I. 77 at 2), general unresponsiveness to requests on behalf of inmates (*see id.* at 4), and alleged understaffing (*see id.* at 5), but Plaintiffs make no attempt to connect any of these alleged deficiencies to Plaintiffs' specific harm or even Defendants' conduct or policies. As such, the Court finds that no reasonable jury could find a causal connection between Defendants' actions or policies and Plaintiffs' harm.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' Eighth Amendment claims.

15

## CONCLUSION

For the reasons discussed above, the Court will deny Plaintiffs' Motion for Class

Certification (D.I. 58), deny as moot Defendants' Motion to Strike (D.I. 59), and grant

Defendants' Motion for Summary Judgment (D.I. 74).  An appropriate Order follows.

16

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 1, 2015, he caused the attached *Opening Brief of the Delaware Department of Correction Commissioner Robert M. Coupe in Support of His Motion to Dismiss* to be filed with the Court via CM/ECF and served electronically to the following:

David B. Stratton, Esq.
Ashleigh K. Reibach, Esq.
Christopher B. Chuff, Esq.
James G. McMillan, III, Esq.
James H. Levine, Esq.
Joanna J. Cline, Esq.
John H. Schanne, II, Esq.
Pepper Hamilton LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709

Daniel G. Atkins, Esq.
Community Legal Aid Society, Inc.
100 West 10th Street
Suite 801
Wilmington, DE 19801

Richard H. Morse, Esq.
ACLU Delaware
100 W. 10th Street
Suite 603
Wilmington, DE 19801

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Joseph C. Handlon
Joseph C. Handlon (#3952)
Deputy Attorney General
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE  19801
(302) 577-8400