**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| COMMUNITY LEGAL AID SOCIETY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 15-688 (GMS) |
| | ) |
| ROBERT M. COUPE, solely in his official capacity as Commissioner of the Delaware Department of Correction, | ) |
| | ) |
| Defendant. | ) |

**ANSWERING BRIEF OF PLAINTIFF COMMUNITY LEGAL AID SOCIETY, INC.,
TO DELAWARE DEPARTMENT OF CORRECTION
COMMISSIONER ROBERT M. COUPE'S MOTION TO DISMISS**

**PEPPER HAMILTON LLP**
David B. Stratton (Del. Bar. No. 960)
Joanna J. Cline (Del. Bar No. 5873)
James G. McMillan (Del. Bar No. 3979)
John H. Schanne, II (Del. Bar No. 5260)
James H.S. Levine (Del. Bar No. 5355)
Christopher B. Chuff (Del. Bar No. 5729)
Ashleigh K. Reibach (Del. Bar. No. 6096)
Hercules Plazza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19801-1709
Telephone: (302) 777-6500

Daniel G. Atkins (Del. Bar No. 2970)
Brian S. Eng (Del. Bar No. 5887)
**COMMUNITY LEGAL AID
SOCIETY, INC.**
100 West 10th Street, Suite 801
Wilmington, DE  19801-6605
Telephone: (302) 575-0660

Richard H. Morse (Del. Bar No. 531)
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF DELAWARE**
100 West 10th Street, Suite 603
Wilmington, DE  19801
Telephone: (302) 654-5326, Ext. 103

*Attorneys for Community Legal Aid Society, Inc.*

Dated: October 21, 2015

# TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.     SUMMARY OF ARGUMENT ................................................................................. 1

III.    STATEMENT OF FACTS ...................................................................................... 2

IV.    ARGUMENT ....................................................................................................... 5

      A.     CLASI, as the PAIMI P&A for the State of Delaware, Has Associational Standing to Bring This Action as the Sole Plaintiff.................................................. 5

      B.     CLASI Has Sufficiently Pleaded an Eighth Amendment Claim .......................... 11

      C.     CLASI's Action for Prospective Relief Against the Commissioner in His Official Capacity Is Not Barred by the Eleventh Amendment ............................ 17

V.      CONCLUSION.................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advocacy Ctr. for the Elderly and Disabled v. La. Dep't of Health and Hosps.*,
    731 F. Supp. 2d 583 (E.D. La. 2010) ......................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................11, 16

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental
    Retardation Ctr. Bd. of Trustees*,
    19 F.3d 241 (5th Cir. 1994) ...................................................................................10

*Barkes v. First Corr. Med. Inc.*,
    766 F.3d 307 (3d Cir. 2014), *rev'd on other grounds,* 135 S. Ct. 2042 (2015) ......16

*Bistrian v. Levi*,
    696 F.3d 352 (3d Cir. 2012) ...................................................................................15

*Casey v. Lewis*,
    834 F. Supp. 1477 (D. Ariz. 1993) ........................................................................13

*Coleman v. Wilson*,
    912 F. Supp. 1282 (E.D. Cal. 1995) .......................................................................13

*Davis v. Ayala*,
    135 S. Ct. 2187 (2015) ...........................................................................................15

*Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.*,
    675 F.3d 149 (2d Cir. 2012) ...................................................................................10

*Disability Rights Wis. v. Wis. Dep't of Pub. Instruction*,
    463 F.3d 719 (7th Cir. 2006) ...................................................................................7

*Doe v. Stincer*,
    175 F.3d 879 (11th Cir. 1999) ..........................................................................5, 6, 9

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ............................................................................1, 11, 12, 14, 15

*Goodrich v. Clinton Cnty. Prison*,
    214 F. App'x 105 (3d Cir. 2007) ............................................................................12

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) .....................................................................................7

Page(s)

*Griffin v. Gomez,*
    741 F.3d 10 (9th Cir. 2014) ...........................................................................14

*Helling v. McKinney,*
    509 U.S. 25 (1993).........................................................................................11

*Hunt v. Wash. State Apple Adver. Comm'n,*
    432 U.S. 333 (1977).............................................................1, 6, 7, 8, 10, 11

*Ind. Prot. & Advocacy Servs. Comm'n v. Ind. Dep't of Corr.,*
    642 F. Supp. 2d 872 (S.D. Ind. 2009) ..........................................................10

*Ind. Protection & Advocacy Servs. Comm'n v. Comm'r,*
    No. 1:08-cv-01317-TWP-MJD, 2012 U.S. Dist. LEXIS 182974 (S.D. Ind., Dec. 31,
    2012) .............................................................................................................12

*Int'l Union v. Brock,*
    477 U.S. 274 (1982).......................................................................................11

*Jones 'El v. Berge,*
    164 F. Supp. 2d 1096 (W.D. Wis. 2001) ......................................................12

*Laflamme v. New Horizons, Inc.,*
    605 F. Supp. 2d 378 (D. Conn. 2009)...........................................................10

*Langley v. Coughlin,*
    715 F. Supp. 522 (S.D.N.Y. 1988) ...............................................................13

*Madrid v. Gomez,*
    889 F. Supp. 1146 (N.D. Cal. 1995), *rev'd on other grounds*, 190 F.3d 990 (9th Cir.
    1999) .............................................................................................................13

*Mo. Prot. & Advocacy Servs., Inc. v. Carnahan,*
    499 F.3d 803 (8th Cir. 2007) ........................................................................10

*N.J. Prot. & Advocacy, Inc. v. Davy,*
    No. 05-1784, 2005 U.S. Dist. LEXIS 22749 (D.N.J. Sept. 30, 2005) ...................10

*N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.,*
    563 F. Supp. 2d 474 (D.N.J. 2008) .................................................................8

*Or. Advocacy Ctr. v. Mink,*
    322 F.3d 1101 (9th Cir. 2003) ...........................................................5, 6, 8, 9, 10

*Pender v. Peckham,*
    No. 1:14-cv-01287-TWP-DML, 2015 U.S. Dist. LEXIS 102893 (S.D. Ind. Aug. 5,
    2015) .........................................................................................................13, 17

Page(s)

*Protection & Advocacy, Inc. v. Murphy*,
No. 90 569, 1992 U.S. Dist. LEXIS 3113 (N.D. Ill. Mar. 16, 1992) ....................................11

*Risinger v. Concannon*,
117 F. Supp. 2d 61 (D. Me. 2000) ......................................................................................10

*Ruiz v. Johnson*,
37 F. Supp. 2d 855 (S.D. Tex. 1999), *rev'd on other grounds*, 243 F.3d 941 (5th Cir.
2001) .............................................................................................................................12

*Silverstein v. Fed. Bureau of Prisons*,
559 F. App'x 739 (10th Cir. 2014) ....................................................................................14

*Siwulec v. J.M. Adjustment Servs., LLC*,
465 F. App'x 200 (3d Cir. 2012) ......................................................................................17

*Stainton v. Tarantino*,
637 F. Supp. 1051, 1082 (E.D. Pa. 1986) ..........................................................................9

*State Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*,
706 F. Supp. 2d 266 (D. Conn. 2010) ...............................................................................10

*Stones v. McDonald*,
7 F. Supp. 3d 422 (D. Del. 2014) ......................................................................................16

*Tenn. Prot. & Advocacy, Inc. v. Br. of Educ. Of Putnam Cnty., Tenn.*,
24 F. Supp. 2d 808 (M.D. Tenn. 1998) .............................................................................11

*United Food & Comm. Workers Union Local 751 v. Brown Grp.*,
517 U.S. 544 (1996) ......................................................................................................6, 8

*Univ. Legal Servs. v. St. Elizabeth's Hosp.*,
No. 1:05-CV-00585, 2005 U.S. Dist. LEXIS 36132 (D.D.C. July 22, 2005) ........................10

*Va. Office for Prot. & Advocacy v. Stewart*,
131 S. Ct. 1632 (2011) .....................................................................................................18

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*,
535 U.S. 635 (2002) .........................................................................................................18

*Walker v. Beard*,
244 F. App'x 439 (3d Cir. 2007) ......................................................................................18

*Warth v. Seldin*,
422 U.S. 490 (1975) ...........................................................................................................8

*Washington-El v. Beard*,
No. 08-1688, 2011 U.S. Dist. LEXIS 24562 (W.D. Pa. Mar. 11, 2011) ..............................13

**Page(s)**

*Wilson v. Seiter,*
    501 U.S. 294 (1991) ................................................................................11

*Ex parte Young,*
    209 U.S.123 (1908) ............................................................................17, 18

STATUTES

*42 U.S.C. § 10801(b)* ...............................................................................7

*42 U.S.C. § 10802(3)* ...............................................................................7

*42 U.S.C. §§ 10805(a)(6)(A)-(C), (a)(9) and 10805(c)(1)(B)(ii)* ....................6

*Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 et
    seq.* ........................................................................................... passim

OTHER AUTHORITIES

U.S. Const. amend. VIII................................................................... passim

U.S. Const. amend. XI ...............................................................1, 16, 17

42 C.F.R. § 51.2 ........................................................................................7

Fed. R. Civ. P. 12(b)(6)..............................................................................11

Fed. R. Evid. 408 .......................................................................................9

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On August 6, 2015, Community Legal Aid Society, Inc. ("CLASI"), the Delaware Protection and Advocacy system ("P&A") under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.* ("PAIMI" or "PAIMI Act"), filed this action for declaratory and injunctive relief preventing the continuing unconstitutional treatment of prisoners with serious mental illness by the Delaware Department of Correction ("DOC").  On October 1, 2015, Defendant Robert M. Coupe, Commissioner of DOC, filed a motion to dismiss. This is Plaintiff's answering brief in opposition to the motion.

## II.     SUMMARY OF ARGUMENT

1.      CLASI has standing to bring this action because, consistent with its obligations under the PAIMI Act, it satisfies the requirements for organizational standing established by *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977).

2.      CLASI has sufficiently pleaded an Eighth Amendment Claim because the facts alleged in the complaint state a claim under *Farmer v. Brennan,* 511 U.S. 825 (1994), that is plausible on its face.

3.      This action is not barred by the Eleventh Amendment because the relief sought is an order commanding a state official to refrain from violating federal law; retrospective relief is not sought.

## III.     STATEMENT OF FACTS

DOC keeps hundreds of prisoners, including those with serious mental illness, in

solitary confinement,[1] where they are deprived of meaningful human contact and subjected to

enforced idleness.  For example, until just before this action was filed, approximately 300

prisoners in James T. Vaughn Correctional Center's ("JTVCC") Secure Housing Unit ("SHU")

were housed in small cells constantly, except for one hour three days per week, when they were

allowed to exercise in solitude and shower.  On the eve of suit, after a year of discussions

between Plaintiff and DOC representatives, approximately 50 of those prisoners were moved to a

newly created unit, called the Secured Transition Unit ("STU").  These inmates are now allowed

out of their cells one hour per day for exercise and a shower in solitude, one hour per week for a

group therapy session (where each inmate sits in a tiny holding cage, unable to see the other

group members) and one hour per month for one-on-one therapy.  (D.I. 1, Compl. ¶¶ 4, 23-25,

27.)

According to DOC, approximately 100 of the 300 prisoners in SHU were on its

mental health roster, and more than 60 had a serious mental illness.  (*Id.* ¶ 24.)  A 2013 Delaware

Supreme Court Task Force report indicates that the number of mentally ill prisoners kept in

solitary confinement at JTVCC is probably closer to 170.[2]  (*Id.* ¶ 21.)  Either way, the number is

---

[1] The United States Department of Justice defines "solitary confinement" and "isolation" to mean "the state of being confined to one's cell for approximately 22 hours per day or more, alone or with other prisoners, that limits contact with others."  Letter from Thomas E. Perez, Assistant Attorney General, U.S. Dep't of Justice, and David J. Hickton, U.S. Attorney, U.S. Attorney's Office, to Tom Corbett, Governor of Pennsylvania (May 31, 2013), *available at* http://www.justice.gov/sites/default/files/crt/legacy/2013/06/03/cresson_findings_5-31-13.pdf; Compl. (D.I. 1) ¶ 20.

[2] The task force determined that approximately 56% of Delaware prisoners had a mental health problem, so one would expect the 300 in SHU and STU to include approximately 168 with mentally illness.

substantial.  The number at each of DOC's other prisons is currently unknown to CLASI (although DOC has said it will provide information).

The cells in SHU and STU are approximately 11' x 8' with four solid walls, broken only by two four-inch-wide windows.  One window allows a constricted view of the empty hallway outside the cell and the other a narrow glimpse of the outdoors.  Prisoners cannot control the lights, which remain lit from approximately 6:00 a.m. to 11:30 p.m.  They cannot participate in therapeutic or educational programs, attend religious services, hold prison jobs, or receive books from the general prison library.  (*Id.* ¶ 36.)  Defendant contends that Complaint ¶ 39 "acknowledges that these and other privileges increase with good behavior."  (Def.'s Br. at 5.) It does not.  It merely recognizes that the monthly limit of one phone call and one non-contact visit may increase with good behavior to one call and one visit per week and that the restriction on non-prison library books may be lessened.  (Compl. ¶¶ 37-39.)  Many prisoners receive the minimum number of visits because DOC staff often view manifestations of mental illness, such as screaming or banging on the cell door, as bad behavior and then deny visits as punishment. (*Id.* ¶¶ 38, 42.)  When the non-contact visits occur, the prisoners and their visitors are separated by closed windows and must speak through speakers that frequently malfunction, forcing them to yell to be heard.  (*Id.* ¶ 38.)

Prisoners with serious mental illness are not provided the rehabilitation services they need:  frequent individual and group therapy sessions; structured out-of-cell activities designed to decrease isolation and psychiatric symptoms and to increase social interaction; and medication compliance.  (*Id.* ¶ 35.)  Prisoners in SHU may see a certified nurse practitioner once every three months and a therapist occasionally without meaningful follow-up.  Three times a week, an employee of DOC's mental health contractor will stand outside the prisoner's cell door,

ask if the prisoner is okay, and then move on, often without receiving a substantive response. Some prisoners are too debilitated by their mental illnesses to interact meaningfully with mental health staff through the cell doors, and others say they are okay because they do not want nearby prisoners and correctional officers to hear about their problems and do not want to trigger a move to the "naked room," an isolation cell where prisoners have only a commode, a mattress on the floor and a smock for clothing.  (*Id.* ¶¶ 31-33.)

Holding prisoners with serious mental illness in solitary confinement has serious physiological and psychological effects, including insomnia, anxiety, panic, withdrawal, hypersensitivity to stimuli, ruminations, cognitive dysfunction, hallucinations, loss of control, aggression, rage, paranoia, hopelessness, lethargy, depression, self-mutilation, increased episodes of psychosis, and suicidal ideation and behavior.  (*Id.* ¶¶ 43, 47.)

This is well known to corrections professionals.  The National Commission on Correctional Health Care ("NCCHC") *Standards for Mental Health Services in Correction Facilities* directs that "[i]nmates who are seriously ill should not be confined under conditions of extreme isolation."  The American Psychiatric Association ("APA") *Position Statement on Segregation of Prisoners with Mental Illness* states that prolonged segregation should be avoided for prisoners with serious mental illness, and that if prisoners with serious mental illnesses are placed in isolation, appropriate clinical supports and out-of-cell time must be provided.  (*Id.* ¶ 45.)

Defendant knows that DOC houses many prisoners with serious mental illness in solitary confinement, keeping them in extreme isolation, thereby exacerbating their symptoms of mental illness and causing serious harm to their mental and physical health.  He also knows that DOC provides limited mental health treatment to the prisoners in solitary confinement, fails to

provide needed psychological rehabilitation services, and fails to make full use of both its Special Needs Unit, intended for mentally ill prisoners deemed incapable of remaining in other maximum security, and the secure building at the Delaware Psychiatric Center.  (*Id.* ¶¶ 58, 60-62.)  He has the authority and ability to stop these actions and inactions and prevent the harms they cause, but he has not done so.  (*Id.* ¶¶ 19, 66.)

CLASI has been Delaware's PAIMI Act P&A ("PAIMI P&A") since PAIMI was enacted in 1986.  (Declaration of Daniel G. Atkins ("Atkins Decl.") ¶ 3, (filed contemporaneously with this brief).)  As the PAIMI P&A, CLASI must protect and advocate for the constitutional and statutory rights of individuals with mental illness.  (Compl. ¶¶ 16-18.) Accordingly, it interviewed mentally ill prisoners and evaluated the records of mentally ill prisoners with the aid of a psychiatrist with significant experience in correctional mental health care, and discussed deficiencies in DOC's treatment of prisoners with serious mental illness with Defendant's counsel.  (*Id.* ¶ 64.)  Thereafter, it filed this action.

## IV.   ARGUMENT

### A.   CLASI, as the PAIMI P&A for the State of Delaware, Has Associational Standing to Bring This Action as the Sole Plaintiff

The purpose for which Congress enacted PAIMI "was to confer standing on protection and advocacy systems . . . as representative bodies charged with authority to protect and litigate the rights of individuals with mental illness."  *Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999) (recognizing that "the standing of protection and advocacy systems as representatives of the segment of our society afflicted with mental illness is well-established in the law" and collecting cases).  *See also, Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003) ("[W]e accept OAC's argument that Congress intended to confer standing to pursue suits like this one on organizations like OAC.").

CLASI meets the requirements for organizational standing set forth in *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (holding that an association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").  The first two requirements are constitutional, while the third is "prudential" and can be abrogated by statute.  *United Food & Comm. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 557-58 (1996).

As to the first element, *Hunt* holds that an organization such as CLASI that is not a "traditional voluntary membership association" has standing if its constituents possess "all of the indicia of membership in an organization." 432 U.S. at 395.  The indicia of membership that an organization's membership must possess for the organization to satisfy the first *Hunt* element are the statutorily required governing board, advisory council, and grievance procedure.  *Or. Advocacy Ctr. V. Mink*, 322 F.3d 1101, 1111-12 (9th Cir. 2003) (holding that constituents of a P&A system had sufficient indicia of membership); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (same).  CLASI and its membership possess those indicia.

As the PAIMI P&A, CLASI is required to have a governing board that includes recipients of mental health services and family members of recipients, an advisory council to advise it on policies and priorities (with its chair and at least 60% of its membership being recipients and family members), and a grievance procedure.  42 U.S.C. §§ 10805(a)(6)(A)-(C), (a)(9) and 10805(c)(1)(B)(ii).  Defendant disputes whether CLASI complies with PAIMI, asserting "it is highly unlikely that CLASI – a law firm – has mentally ill constituents that perform" these important membership functions.  That disrespect for people with mental illness

is not justified.  Recipients of mental health services and their family members perform all these

functions.  (*See* Atkins Decl. ¶¶ 9-14.)  The first *Hunt* requirement is satisfied.[3]

Defendant's argument that CLASI does not satisfy the second *Hunt* requirement

because it has not "demonstrate[d] that a germane interest of CLASI is protecting prisoner

rights," (Def.'s Br. at 12), disregards the fact that CLASI is prosecuting this case on behalf of

"prisoners diagnosed with serious mental illness," (Compl. ¶ 1), not prisoners *in general*.

Protecting and advocating for people with mental illness is central to CLASI's

statutory purpose.  PAIMI was enacted:

> (1) to ensure that the rights of individuals with mental illness are protected; and
> (2) to assist States to establish and operate a protection and advocacy system for
> individuals with mental illness which will –
>> (A) protect and advocate the rights of such individuals through activities
>> to ensure the enforcement of the Constitution and Federal and State
>> statutes; and
>> (B) investigate incidents of abuse and neglect of individuals with mental
>> illness if the incidents are reported to the system or if there is probable
>> cause to believe that the incidents occurred.

42 U.S.C. § 10801(b).

From its inception, the PAIMI Act has applied to individuals with mental illness

in prison.  *Disability Rights Wis. v. Wis. Dep't of Pub. Instruction*, 463 F.3d 719, 725 (7th Cir.

2006); *see also* 42 U.S.C. § 10802(3) (defining "facility" to include jails and prisons); 42 C.F.R.

---

[3] Although Defendant recognizes he has brought a factual challenge to standing, *see* Def.'s Br. at 12 n. 8 ("this challenge to standing may involve factual issues beyond the Complaint that may need to be explored in limited discovery"), he contends CLASI lacks standing because "there are no allegations that CLASI is a membership organization or that it has constituents that possess the indicia of a membership organization."  Def.'s Br. at 11.  Since his challenge is factual, the Court is not limited to analysis of the Complaint's allegations.  *See Gould Elecs., Inc. v. United States*,  220 F.3d 169, 177 (3d Cir. 2000) ("If the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction.").  But even if the Court could not go beyond the pleadings, they alone would be sufficient to defeat the argument that the first *Hunt* requirement is not satisfied.  It is not unreasonable to infer from CLASI's status as a PAIMI P&A that it is governed in accordance with the PAIMI requirements.

§ 51.2 (clarifying that "jails and prisons" includes "all general areas as well as special mental health or forensic units").  Seeking adequate treatment of prisoners with serious mental illness is unquestionably germane to CLASI's purpose.  The second *Hunt* requirement is satisfied.

The third *Hunt* requirement is not applicable because it has been abrogated by statute.  *See Or. Advocacy Ctr.*, 322 F.3d at 1113 (citing *United Food*, 517 U.S. at 548-49, 558) (holding that by authorizing PAIMI P&As to sue on behalf of individuals with mental illness, Congress abrogated the third, prudential standing requirement).  But even if the Complaint must satisfy the third *Hunt* requirement, it has done so because individual member participation in a lawsuit is generally not necessary when an organizational plaintiff seeks prospective or injunctive relief on behalf of its members.  *Hunt*, 432 U.S. at 343 (1977) ("[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.  If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.") (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)); *see also United Food*, 517 U.S. at 546 (1996); *N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, 563 F. Supp. 2d 474, 483 (D.N.J. 2008).

Failing even to cite the PAIMI Act, Defendant states he "is unaware of any authority under state law for CLASI to bring this action solely in its own name," (Def.'s Br. at 3), because the Delaware Mental Health Patients' Bill of Rights does not grant such authority. (Def.'s Br. at 3, 12 n.7.)  That is, of course, irrelevant since, as Delaware's PAIMI P&A, CLASI

also has rights and obligations under federal law.  Defendant's failure even to acknowledge the

federal statute is disingenuous at best, given the history of this matter.[4]

        The two Courts of Appeal that addressed whether PAIMI P&As like CLASI have

standing sue on behalf of their constituents both held that they do.  *See Or. Advocacy Ctr. v.*

*Mink*, 322 F.3d at 1111-12 (holding that constituents of the Oregon PAIMI P&A had sufficient

indicia of membership to enable the P&A to sue); *Doe*, 175 F.3d at 886-87 (holding that

Florida's PAIMI P&A could sue on its constituents' behalf because, like members of a

---

[4] Defendant's brief refers to "[a] cooperative effort to address those concerns, which commenced before this lawsuit . . . ."  Def.'s Br. at 1.  The facts of that effort, which Defendant omitted when he alluded to the effort in his brief show that prior to filing suit, CLASI referred DOC to the federal statute and explained CLASI's rights and obligations thereunder.  *See* Atkins Decl. ¶ 19 and Exh. A.  After interviewing the mentally ill prisoners in solitary confinement whom it could interview without requesting DOC cooperation, *i.e.*, prisoners already known to CLASI and its counsel, CLASI asked DOC to provide a copy of DOC's mental health roster.  The letter making that request discussed the PAIMI Act and CLASI's role thereunder with regard to advocating on behalf of prisoners with mental illness.  *Id.*  The letter led to discussions between counsel for the parties (in which they disagreed on the relationship between federal and state law but ultimately arrived at a procedure by which CLASI could interview additional prisoners and obtain additional medical records), Atkins Decl. ¶ 20 and Exh. B, and further discussions.  In April 2015, counsel for the parties spoke, and CLASI counsel indicated it was preparing a complaint.  Counsel agreed that a meeting with Defendant should be held before suit was filed.  To provide context for the meeting by informing DOC generally of the type of relief CLASI believes necessary to satisfy the Eighth Amendment, CLASI counsel sent DOC counsel two agreements resolving similar matters.  Counsel for CLASI agreed to send DOC a copy of the draft complaint before the meeting.  The draft complaint (excluding the allegations regarding the exemplars) was provided to DOC May 5, 2015.  CLASI counsel met the next day with the Defendant and members of his team.  The parties agreed to continue communicating.  Several weeks later, apparently at DOC's initiative, the House Joint Resolution referred to in Defendant's brief was introduced in the General Assembly.  CLASI counsel met with the Defendant and members of his team again on July 22, 2015.  Based on the information received at that meeting, CLASI's executive director decided that suit would be necessary.  This suit was filed two weeks thereafter.  Atkins Decl. ¶¶ 18-26.

Fed. R. Evidence 408 could be said to apply to these communications, but since Defendant goes outside the complaint and refers to the "cooperative effort" in arguing for a dismissal of this case, CLASI is obliged to respond.  *See generally Stainton v. Tarantino*, 637 F. Supp. 1051, 1082 (E.D. Pa. 1986) (finding evidence of negotiations admissible despite Rule 408 because the opposing party had introduced it for impeachment purposes).

traditional association, its constituents could influence P&A's priorities and activities).  Both

decisions specifically referred to the PAIMI Act requirements for a PAIMI P&A's governing

board, advisory council, and grievance procedure in holding that the PAIMI P&A's constituents

were "the functional equivalent of members."  *Or. Advocacy Ctr.,* 322 F.3d at 1111-12; *Doe*, 175

F.3d at 886.  Numerous District Courts have also held that PAIMI P&As have standing under

*Hunt* to sue on their constituents' behalf.[5]

The cases cited by Defendant as finding that advocacy organizations lacked

associational standing, (Def.'s Br. at 10-11), are all readily distinguishable.  *Disability*

*Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012),

declined to address whether a PAIMI P&A could assert associational standing because that

plaintiff  "[was] not a P&A *system* [under the PAIMI Act] but a *contractor* to the system."  675

F.3d at 158 (emphasis in original).  The plaintiffs in the two other appellate cases cited did not

assert standing as PAIMI P&As.  *See Ass'n for Retarded Citizens of Dallas v. Dallas Cnty.*

*Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 n.5 (5th Cir. 1994)

(citing a statute other than the PAIMI Act)[6]; *Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499

F.3d 803 (8th Cir. 2007) (making no reference to PAIMI Act or its requirements because suit

[5] *See, e.g., N.J. Prot. & Advocacy, Inc. v. Davy*, No. 05-1784, 2005 U.S. Dist. LEXIS
22749, at *6-11 (D.N.J. Sept. 30, 2005); *Ind. Prot. & Advocacy Servs. Comm'n v. Ind. Dep't of
Corr.*, 642 F. Supp. 2d 872, 876-80 (S.D. Ind. 2009); *Laflamme v. New Horizons, Inc.*, 605 F.
Supp. 2d 378, 397 (D. Conn. 2009); *State Office of Prot. & Advocacy for Persons with
Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 284 (D. Conn. 2010); *Univ. Legal Servs. v. St.
Elizabeth's Hosp.*, No. 1:05-CV-00585, 2005 U.S. Dist. LEXIS 36132, at *15 (D.D.C. July 22,
2005); *Risinger v. Concannon*, 117 F. Supp. 2d 61, 71 (D. Me. 2000) (holding PAIMI P&A had
associational standing).

[6] Recognizing that *Association for Retarded Citizens of Dallas* addressed only the
standing of a non-PAIMI organization, in *Advocacy Ctr. for the Elderly and Disabled v. La.
Dep't of Health and Hosps.*, 731 F. Supp. 2d 583, 596 (E.D. La. 2010), a district court in the
Fifth Circuit ruled that Louisiana's PAIMI P&A could assert associational standing.

was brought "on behalf of developmentally disabled persons" and not individuals with mental illness).  Unlike CLASI, the plaintiff in *Tenn. Prot. & Advocacy, Inc. v. Br. of Educ. Of Putnam Cnty., Tenn.*, 24 F. Supp. 2d 808, 816 (M.D. Tenn. 1998), did not allege that any of its constituents had, in fact, suffered injuries.  The issue in *Protection & Advocacy, Inc. v. Murphy*, No. 90 569, 1992 U.S. Dist. LEXIS 3113, at *4 (N.D. Ill. Mar. 16, 1992), was whether the plaintiff P&A's constituents had viable claims in their own right, and the court did not address whether a P&A can satisfy the requirements of *Hunt.*

Citing no authority suggesting class certification standards relate to a party's associational standing, Defendant argues that CLASI's having standing would present "an end-around critical protections afforded under Rule 23," and would "essentially certify a vague and undefined class of Delaware inmates."  (Def.'s Br. at 12-13.)  CLASI was not required to bring this case as a class action, so there is no reason for this Court to consider whether it could have done so.  *See Int'l Union v. Brock*, 477 U.S. 274, 288-90 (1982) (explicitly rejecting the proposition that the class action provisions of Fed. R. Civ. P. 23 should be considered when organizations assert associational standing).

### B. CLASI Has Sufficiently Pleaded an Eighth Amendment Claim

A claim is valid and will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  An Eighth Amendment claim for relief against a prison official exists if (1) prisoners are "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official is "'deliberate[ly] indifferen[t]' to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  A substantial risk of serious harm exists when prison officials fail to

address serious medical needs, including those posed by mental illness. *Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 111 (3d Cir. 2007) (finding that plaintiff's mental illness was a serious medical need where "[h]is mental illnesses were diagnosed by psychiatrists as requiring treatment").

To be deliberately indifferent, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. A plaintiff need not allege direct evidence that an official knew of the substantial risk. An official's knowledge of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. When the substantial risk is "pervasive," and the "circumstances suggest that the defendant-official being sued had been exposed" to the substantial risk, the factfinder can properly infer that he "'must have known' about it." *Id*. at 842-43.

Federal courts have repeatedly held that placing individuals with serious mental illness in such conditions is cruel and unusual punishment under the Eighth Amendment to the Constitution. *See, e.g.*, *Ind. Protection & Advocacy Services Comm'n v. Comm'r*, No. 1:08-cv-01317-TWP-MJD, 2012 U.S. Dist. LEXIS 182974, at *60-61 (S.D. Ind., Dec. 31, 2012) (holding that the Indiana Department of Correction's practice of placing prisoners with serious mental illness in segregation constituted cruel and unusual treatment in violation of the Eighth Amendment); *Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1101-02 (W.D. Wis. 2001) (granting a preliminary injunction requiring the removal of prisoners with serious mental illness from "supermax" prison); *Ruiz v. Johnson*, 37 F. Supp. 2d 855, 915 (S.D. Tex. 1999) ("Conditions in TDCJ-ID's administrative segregation units clearly violate constitutional standards when imposed on the subgroup of the plaintiffs' class made up of mentally-ill prisoners"), *rev'd on*

*other grounds*, 243 F.3d 941 (5th Cir. 2001), *adhered to on remand*, 154 F. Supp. 2d 975 (S.D.

Tex. 2001); *Coleman v. Wilson*, 912 F. Supp. 1282, 1320-21 (E.D. Cal. 1995) ("[D]efendants'

present policies and practices with respect to housing of [prisoners with serious mental disorders]

in administrative segregation and in segregated housing units violate the Eighth Amendment

rights of class members."); *Madrid v. Gomez*, 889 F. Supp. 1146, 1265-66 (N.D. Cal. 1995)

(concluding that "[f]or [mentally ill inmates], placing them in the SHU is the mental equivalent

of putting an asthmatic in a place with little air to breathe. The risk is high enough, and the

consequences serious enough, that we have no hesitancy in finding that the risk is plainly

'unreasonable.'"), *rev'd on other grounds*, 190 F.3d 990 (9th Cir. 1999); *Casey v. Lewis*, 834 F.

Supp. 1477, 1549-50 (D. Ariz. 1993) (finding Eighth Amendment violation when "Despite their

knowledge of the harm to seriously mentally ill inmates, ADOC routinely assigns or transfers

seriously mentally ill inmates to [segregation units]"); *Pender v. Peckham*, No. 1:14-cv-01287-

TWP-DML, 2015 U.S. Dist. LEXIS 102893, at *5-6 (S.D. Ind. Aug. 5, 2015) (holding that

plaintiff stated an Eighth Amendment claim by alleging that her "prolonged confinement to the

SHU caused and exacerbated her mental illness and that Defendants exhibited deliberate

indifference to her condition"); *Washington-El v. Beard*, No. 08-1688, 2011 U.S. Dist. LEXIS

24562, at *13 (W.D. Pa. Mar. 11, 2011) (concluding that plaintiff had adequately pleaded

substantial risk of serious harm "[i]n light of plaintiff's allegations of a well-documented history

of mental illness, [and] an exacerbation of symptoms during a lengthy administrative

confinement"); *Langley v. Coughlin*, 715 F. Supp. 522, 540 (S.D.N.Y. 1988) (holding that

evidence of prison officials' failure to screen out from SHU "those individuals who, by virtue of

their mental condition, are likely to be severely and adversely affected by placement there" states

an Eighth Amendment claim).

The facts alleged in the Complaint are sufficient to establish that many prisoners are held by DOC under conditions posing a substantial risk of serious harm. As detailed *supra* at 2-3 and in the paragraphs of the Complaint cited therein, DOC confines at least 100 prisoners diagnosed with serious mental illness without allowing them either meaningful human interaction or access to therapeutic and educational programs, and without providing adequate medical and mental health care. Holding prisoners with serious mental illness under these conditions has serious physiological and psychological effects, (Compl. ¶¶ 43, 45, 47), thereby creating a substantial risk of serious harm.

Defendant's contention (Def.'s Br. at 15) that the Third Circuit has held solitary confinement constitutional does not support his motion to dismiss, since the issue presented by this case is the constitutionality of Delaware's solitary confinement of prisoners with serious mental illness, not the constitutionality of solitary confinement generally. Likewise, the cases he cites as upholding solitary confinement of mentally ill prisoners, (*id.*), are inapposite. In *Silverstein v. Federal Bureau of Prisons*, 559 F. App'x 739, 757 (10th Cir. 2014), plaintiff's anxiety and depression were found not to be "serious mental health issues." In *Griffin v. Gomez*, 741 F.3d 10, 14 (9th Cir. 2014), plaintiff did not claim a "mental health deficit[]."

Nor does Defendant's contention that CLASI must allege a substantial risk to a particular inmate, (Def.'s Br. at 16), have merit. *See Farmer*, 511 U.S. at 843 ("It does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."). CLASI provides examples of harm to specific prisoners for illustration, (Compl. ¶¶ 67-96), and it alleges harm to a particular *group* of prisoners – those with serious mental illness. (*Id.* ¶ 1.) As set forth *supra* at 4-5 and in the fact allegations cited therein, Defendant knows the conditions of solitary confinement in the prisons

he runs, the deprivations to which prisoners are subjected, and the substantial risk of serious harm to the prisoners who are seriously mentally ill.  These allegations are sufficient to show a substantial risk of serious harm.

      The allegations of Defendant's knowledge, like the allegations of the risk of harm, are plausible.  As detailed *supra* at 4, the dangers of solitary confinement to the prisoners' mental health are well known.  *See also Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015) (Kennedy, J., concurring) (recognizing that "the human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators").  Also, after CLASI interviewed mentally ill prisoners kept in solitary confinement and had prisoners' records reviewed by an experienced psychiatrist, it discussed the deficiencies in DOC's treatment of prisoners with serious mental illness with Defendant's counsel.  (Compl. ¶ 64.) It is plausible that counsel shared the information with Defendant.  In addition, Defendant would have the information presented during the process described *supra* at 9 n.4.

      Aware of the substantial risk of serious harm, Defendant has failed to take appropriate action.  (Compl. ¶¶ 100-05.)  An official aware of a substantial risk of serious harm must take "reasonable measures to abate" that risk.  *Farmer*, 511 U.S. at 847.  *See also Bistrian v. Levi*, 696 F.3d 352, 371-72 (3d Cir. 2012) (holding that the plaintiff prisoner stated an Eighth Amendment claim by alleging that a prison official who attempted to intervene in an altercation did so unreasonably).

      Defendant repeatedly refers to the recent establishment of STU, (*e.g.*, Def.'s Br. at 4-6), perhaps to suggest he took reasonable action to abate the risk. While the reasonableness of his action cannot be decided at this early stage of the case, it is worth noting the insufficiency of the changes to which his brief points.  The prisoners held there are still kept in solitary

confinement as defined by the U.S. Department of Justice, still subjected to extreme environmental deprivation and forced idleness, without the necessary rehabilitation services and still at substantial risk of serious harm.  (*See* Complaint ¶¶ 20, 24, 35-36, 43-46.)

Defendant's reliance on *Ashcroft v. Iqbal* to argue that personal involvement with a particular inmate is required, (Def.'s Br. at 16), is misplaced. It did not change the long-standing law that personal involvement, *i.e.*, a prison official's direct involvement prisoners' care, is not required for liability under §1983.  *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 330 (3d Cir. 2014), *rev'd on other grounds,* 135 S. Ct. 2042 (2015).  *See also Stones v. McDonald*, 7 F. Supp. 3d 422, 436 (D. Del. 2014) (explaining that plaintiffs sufficiently assert personal involvement "through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies").

Because a prison official is personally involved when he knowingly permits personnel to deprive prisoners of their constitutional rights or allows such policies, Defendant's contention that he may "justifiably rely on medical and mental health professionals" in providing health care, (Def.'s Br. at 17), is misplaced.  In the cases he cites, prison officials had relied on medical providers' decisions as to what care was appropriate, or the officials did not know care was not being provided.  But here, the Complaint alleges that Defendant knowingly permits prisoners with serious mental illness to remain subject to conditions – including inadequate mental health care – that place them at risk of serious harm, and it does *not* allege that Defendant is following the medical advice of physicians when he permits the conditions of solitary confinement to remain as they are.  Thus, those cases do not show that the Complaint fails to plead a claim of deliberate indifference.  A prison official cannot take refuge behind healthcare

providers when the complaint alleges that he "was aware of damages to [the prisoner's health] caused by her stay in the SHU, [and] did nothing to alter the conditions of her confinement." *Pender v. Peckham*, No. 1:14-cv-01287-TWP-DML, 2015 U.S. Dist. LEXIS 102893, at *5 (S.D. Ind. Aug. 5, 2015).

Defendant complains about what he calls "[g]eneralities and vagueness" in the complaint, criticizing, *e.g.*, the use of the word "some" to modify prisoners and "frequently" with regard to malfunctions, and the references to "adequate steps," "sufficient contacts," and "many prisoners." (Def.'s Br. at 5.)  This criticism contradicts Defendant's own recognition that the complaint "need not contain detailed factual allegations." (*Id.* at 7 (citing *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012))).  Defendant also criticizes the complaint for "fail[ing] to offer any specific solutions to what it claims is constitutionally deficient mental health care." (*Id.* at 1).  Doing so in the pleadings would have been premature, and would not have given Defendant any information CLASI had not already given him informally.  *See supra* at 9 n.4.

Because the complaint alleges facts showing it is plausible that Delaware prisoners in solitary confinement with serious mental illness face a substantial risk of serious harm and that defendant knew of the substantial risk and failed to take reasonable action to abate the risk, it states a viable Eighth Amendment claim.

C.    **CLASI's Action for Prospective Relief Against the Commissioner in His Official Capacity Is Not Barred by the Eleventh Amendment**

Searching for an Eleventh Amendment bar to this suit, Defendant seeks to have this Court apply *Ex parte Young*, 209 U.S.123 (1908), as allowing only "prospective claims against state officials in their *individual* capacities." (Def.'s Br. at 18.)  *Young*, which held that the Eleventh Amendment permitted enjoining a state attorney general acting in his official

-17-

capacity from enforcing unconstitutional law, and its progeny, do not permit that reading.  *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."); *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment))); *Walker v. Beard*, 244 F. App'x 439, 440-41 (3d Cir. 2007) (concluding that a prisoner's action for injunctive relief against the Secretary of the Pennsylvania Department of Corrections in his official capacity, which was dismissed on other grounds, was not barred by the Eleventh Amendment).

Defendant seeks to distinguish the precedent, stating "[h]ere, unlike the facts of *Young* and *Stewart*, where plaintiffs were seeking to prevent an official from taking certain action that arguably violated federal law, CLASI is seeking affirmative, mandatory injunctive and declaratory relief relating to how the State of Delaware houses its most dangerous and problematic offenders."  (Def.'s Br. at 19.)  He significantly mischaracterizes the nature of this suit and his own authority.  CLASI seeks only to require Defendant to treat seriously mentally ill inmates as required by the Eight Amendment.  As long as Defendant does that, he can administer the prisons however he sees fit.  As a practical matter, a detailed order is necessary to assure that DOC complies with the Eighth Amendment, but that is the Defendant's doing, not CLASI's.  There is no Eleventh Amendment bar to the Eighth Amendment claim.

V.      **CONCLUSION**

        For the foregoing reasons, CLASI respectfully requests that the Court deny the Commissioner's motion to dismiss.

Respectfully submitted,

**PEPPER HAMILTON LLP**

*/s/ Joanna J. Cline*

Richard H. Morse (Del. Bar No. 531)
**AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF DELAWARE**
100 West 10th Street, Suite 603
Wilmington, DE  19801
Telephone: (302) 654-5326, Ext. 103
Facsimile: (302) 654-3689
*rmorse@aclu-de.org*

Daniel G. Atkins (Del. Bar No. 2970)
Brian S. Eng. (Del. Bar No. 5887)
**COMMUNITY LEGAL
    AID SOCIETY, INC.**
100 West 10th Street, Suite 801
Wilmington, DE  19801-6605
Telephone: (302) 575-0660
Facsimile: (302) 575-0840
*datkins@declasi.org*
*beng@declasi.org*

Kyle A. Dolinsky
**PEPPER HAMILTON LLP**
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4907
Facsimile: (800) 641-6357
*dolinskyk@pepperlaw.com*

Suzanne M. Noyes
**PEPPER HAMILTON LLP**
Suite 400
301 Carnegie Center
Princeton, NJ 08543-5276
Telephone: (609) 452-4232
Facsimile: (609) 452-1147
*noyess@pepperlaw.com*

David B. Stratton (Del. Bar. No. 960)
Joanna J. Cline (Del. Bar No. 5873)
James G. McMillan (Del. Bar No. 3979)
John H. Schanne, II (Del. Bar No. 5260)
James H.S. Levine (Del. Bar No. 5355)
Christopher B. Chuff (Del. Bar No. 5729)
Ashleigh K. Reibach (Del. Bar No. 6096)
Hercules Plazza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19801-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
*strattond@pepperlaw.com*
*clinej@pepperlaw.com*
*mcmillaj@pepperlaw.com*
*levinejh@pepperlaw.com*
*schannej@pepperlaw.com*
*chuffc@pepperlaw.com*
*reibacha@pepperlaw.com*

*Counsel for Plaintiff
Community Legal Aid Society, Inc.*

Dated: October 21, 2015

-20-