# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COMMUNITY LEGAL AID SOCIETY, )
INC.,                        )
                             )
                Plaintiff,   )        C.A. No. 15-688 (GMS)
                             )
        v.                   )
                             )        **JURY TRIAL DEMANDED**
ROBERT M. COUPE, solely in his )
capacity as Commissioner of the Delaware )
Department of Correction,    )
                             )
                Defendant.   )

## REPLY BRIEF OF THE DELAWARE DEPARTMENT
## OF CORRECTION COMMISSIONER ROBERT M. COUPE
## IN SUPPORT OF HIS MOTION TO DISMISS

STATE OF DELAWARE
DEPARTMENT OF JUSTICE
Joseph C. Handlon (#3952)
Ryan P. Connell (#5423)
Deputy Attorneys General
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE 19801
(302) 577-8400

Dated: November 2, 2015          *Attorneys for Robert M. Coupe*

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................. iii

ARGUMENT ................................................................................................... 1

I.     CLASI LACKS STANDING ................................................................. 1

II.    THE COMPLAINT FAILS TO STATE A COGNIZABLE CLAIM ................................. 4

III.   CLASI'S ELEVENTH AMENDMENT REPLY IS AN EMPTY FORMALISM ............. 9

CONCLUSION ............................................................................................... 10

## TABLE OF CITATIONS

### CASES

*Abraham v. Danberg*, 832 F.Supp.2d 368 (D. Del. 2011)...............................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................4, 8

*Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental
    Retardation Ctr. Bd. of Trustees*, 19 F.3d 241 (5th Cir. 1994)...........................................4

*Barkes v. First Corr. Med. Inc.*, 766 F.3d 307 (3d Cir. 2014)........................................................8

*Brown v. Plata*, 563 U.S. 493 (2011) .............................................................................................7

*Davis v. Ayala*, 135 S.Ct. 2187 (2015) ...........................................................................................6

*Disability Rights Wisconsin v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796 .......................4

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) ........................................................................1, 2, 3

*Estelle v. Gamble*, 429 U.S. 97 (1976) ........................................................................................8, 9

*Ex Parte Young*, 209 U.S. 123 (1908) .......................................................................................9, 10

*Farmer v. Brennan*, 511 U.S. 825 (1990) .......................................................................................7

*Groppi v. Bosco*, 2006 WL 3610124 (3d Cir. Dec. 12, 2006) ........................................................5

*Hunt v. Wash. State Apple Adver. Comm'n.*, 432 U.S. 333 (1977) ......................................1, 2, 3, 4

*Missouri Prot. and Advocacy Serv., Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007) ...................4

*Olim v. Norwood*, 461 U.S. 238 (1983)..........................................................................................5

*Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003).....................................................1, 3

*Pender v. Peckham*, 2015 WL 4664842 (Aug. 5, 2015)..................................................................5

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1983)............................................10

*Rhodes v. Chapman*, 452 U.S. 337 (1981) .....................................................................................5

*Sheehan v. Beyer*, 51 F.3d 1170 (3d Cir. 1995)..............................................................................5

*Thornton v. West*, 529 Fed. App'x 107 (3d Cir. 2013).................................................................9

*Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632 (2011) ....................9, 10

*Warth v. Seldin*, 422 U.S. 490 (1975)..............................................................................................1

*Washington-EL v. Beard*, 562 Fed. App'x, 61 (3d Cir. 2014)........................................................5

*Wilson v. Taylor*, 466 F.Supp.2d 567 (D. Del. 2006) .........................................................................5

## STATUTES AND OTHER AUTHORITIES

U.S. Const. Amend. VIII ...........................................................................................5, 8, 9, 10

U.S. Const. Amend. XI ..................................................................................................9, 10

42 U.S.C. § 10805(a)(1)(B) ....................................................................................................2

42 U.S.C. § 10805(a)(1)(C) ....................................................................................................2

16 *Del. C.* § 5161(a) ...............................................................................................................1

This is Commissioner Coupe's reply brief in response to CLASI's answering brief ("AB").

## I.    CLASI LACKS STANDING.

In opposing the challenge to CLASI's standing, CLASI self-identifies as the PAIMI P&A for Delaware and argues, therefore, that it was automatically conferred with associational standing to bring this action.   AB at 8-9.   Oddly, however, CLASI did not submit any documentation with its Answering Brief that it was in fact designated in 1986 as the PAIMI P&A.[1]   Further, when an association asserts standing solely as the representative of its members, it "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977).   In its Answering Brief, CLASI primarily relies on excerpts of *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) and *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003).   These decisions and those CLASI does not discuss, however, brings to light the hamartia of CLASI's position.

In *Doe*, a P&A brought a cause of action challenging a Florida statute making right of access to medical records inapplicable to mental health records, alleging the statute violated the ADA.   The trial court held that ADA preempted the state statute.   On appeal, the 11th Circuit held the P&A failed to establish standing.   *Doe*, 175 F.3d at 888.   In   vacating,   the   Court recognized that Congress enacted PAIMI "to ensure that the rights of individuals with mental illness are protected" and "to assist states to establish and operate a protection and advocacy system for individuals with mental illness which will . . . protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes. . . ." *Id.* at 882.   Under PAIMI, the Court reasoned there are two legal theories a P&A

---

[1] The only evidence of PAIMI designation is 16 *Del. C.* § 5161(a), where CLASI's role is limited to advocating on behalf of patients admitted to hospitals and residential centers. OB at 3.  Although CLASI submitted a declaration and other documents with its Answering Brief, it is curious that no documentation has been provided evidencing CLASI's designation under PAIMI.

1

may pursue: a P&A may either seek to establish that the defendant's actions caused injury to the P&A itself; or it may sue on behalf of its constituents during the course of their treatment or within ninety days after being discharged from a treatment facility pursuant to 42 U.S.C. § 10805(a)(1)(B), (C). *Id.* at 884. The court was clear, however, that pursuing either cause of action is subject, "of course, to the requirements of Article III as laid out in *Hunt* and its progeny." *Id.* Analyzing the *Hunt* factors, the court went on to find the advocacy center in *Doe* analogous to the *Hunt* Commission and held the advocacy center may sue on behalf of its constituents, just like a "more traditional association may sue on behalf of its members." *Id.* at 885-886. "The right to sue on behalf of its constituents, however, does not relieve the [a]dvocacy [c]enter of its obligation to satisfy *Hunt's* first prong by showing that one of its constituents otherwise had standing to sue to support the district court's grant of summary judgment and injunctive relief." *Id.* at 887.

In *Doe*, as in the instant case, the advocacy center relied solely upon an affidavit of its director to establish its satisfaction of the *Hunt* factors. *Id.* Finding the affidavit lacking, the court noted that no evidence had been provided that any constituent had been denied access to mental health records based on the Florida statute at issue. "Without such allegations, the [a]dvocacy [c]enter cannot show that any of its clients suffered a concrete injury that is traceable to the challenged statute and could be redressed by a favorable decision in this action—as it must to establish standing under *Hunt*." *Id.* Moreover, although the affidavit in *Doe* stated "many" Floridians had been denied access to mental health records and that others do not request their records, believing such efforts to be futile, ***the director did not attest that any of these persons were clients of the advocacy center*** and could not, as a result, establish that any particular injury was caused by the Florida statute at issue or that the injunctive relief requested by the advocacy center would redress that injury. *Doe*, 175 F.3d at 888.

Assuming CLASI has a right to sue on behalf of Delaware's prisoners, the Complaint still fails to establish standing due to the prolific generalities and vague language of its allegations.

The Atkins Declaration fails to rectify this fatal flaw.  Attempting to establish that any of its clients suffered a redressable, concrete injury, paragraph 15 of the Declaration states:

> I began receiving reports in 2013 that prisoners with serious mental illness were being housed in solitary confinement for indefinite periods of time, without receiving appropriate mental health treatment or adequate time out of their cell.  I initiated an investigation in late 2013 that has continued through the filing of this lawsuit.

The Atkins Declaration, like the affidavit in *Doe,* fails to identify any constituent with particularity, and consequently, fails to establish that any of CLASI's constituents have standing to sue.  Though the Complaint references anonymous exemplars, these prisoners – as explained in the Opening Brief – are almost entirely no longer housed in SHU, have been transferred to STU, or have been offered and rejected housing and services in STU.  Importantly, neither the Complaint nor the Declaration demonstrates that any of its example prisoners are clients of CLASI.

Similarly, in *Or. Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003), a nonprofit organization, a public defense firm **and a named criminal defendant** filed suit against state agency officials, alleging that delays in accepting criminal defendants with mental health issues into a state hospital violated due process.  Analyzing the nonprofit's standing, the court rejected the nonprofit's "attempts to short-circuit [the] standing arguments by contending that Congress, in enacting PAIMI, statutorily conferred standing on organizations," holding that the nonprofit's "argument that it . . . *necessarily* has standing must fail." *Mink*, 322 F.3d at 1109 – 1110 (emphasis in original).  "Thus, PAIMI – although relevant to the standing analysis – does not definitively answer the question whether [the nonprofit] has standing." The court then proceeded, as the *Doe* court had, to analyze the nonprofit's standing utilizing *Hunt*.  It stated, "[t]he essence of the standing question, in its constitutional dimension, is whether the plaintiff has alleged such a personal stake in the outcome of the controversy [as] to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Mink,* 322 F.3d at 1108 (internal quotations omitted).  Finding the nonprofit met the *Hunt* factors and established standing, the court noted that the state did not dispute that at least seven constituents of the

nonprofit had independent standing to sue. The same concession has not been made here, and therefore *Mink* does not help CLASI.

Dismissal of the Complaint due to CLASI's failure to establish standing as the sole plaintiff is consistent with rulings in other courts that have examined this very issue. In *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241 (5th Cir. 1994), the court held an advocacy group could not establish the requisite "injury in fact" required for constitutional standing and reasoned that, although individual members of the group had standing, standing was not automatically conferred upon the advocacy group. Similarly, the Eighth Circuit held that an advocacy organization lacked standing to challenge a state law barring the mentally incapacitated from voting because the organization could neither establish that any individual "member" of the organization possessed standing, nor could the claim be asserted or relief ordered without participation of at least one individual. *Missouri Prot. & Advocacy Serv., Inc. v. Carnahan*, 499 F.3d 803 (2007). Finally, the Seventh Circuit dismissed on standing grounds an action brought by a statutorily-created organization charged with protecting the rights of persons with developmental disabilities, challenging a state's separate educational facility for disabled children as volatile of the Americans with Disabilities Act. *Disability Rights Wisconsin v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796 (7th Cir. 2008). In so doing, the court accepted that disabled children were "members" of the organization, but that "advocacy is only appropriately - and constitutionally - undertaken on behalf of another when that other has suffered an injury." *Id* at 804. Where the Complaint does not identify an individual "member" with standing, *Hunt's* first requirement is not met, and, dismissal is therefore appropriate.

## II.   THE COMPLAINT FAILS TO STATE A COGNIZABLE CLAIM.

The Complaint fails to state sufficient plausible facts stating a claim of deliberate indifference against Commissioner Coupe. OB at 14-17. CLASI offers a number of responses in rebuttal. First, CLASI argues that the Complaint should survive scrutiny under *Iqbal* because

numerous other district court decisions from outside Delaware have held that placing individuals with SMI in "such conditions" is cruel and unusual punishment under the Eighth Amendment. AB at 12-13 (citing cases). If anything, the cases cited by CLASI support a conclusion that the pleadings in this case are deficient. None of those cases involved a P&A suing only in its name, asserting the extremely vague and amorphous claims asserted here on behalf of no particular inmate. Indeed, most opinions are decisions made after trial based upon specific claims of one or more inmates. In one of the few decisions where the district court initially upheld the complaint, the Third Circuit later affirmed the grant of a motion to dismiss and for summary judgment. *See Washington-EL v. Beard*, 562 Fed. App'x 61, 64 (3d Cir. 2014) (affirming summary judgment on a conditions-of-confinement, due-process-claim relating to being incarceration in restrictive housing). In another decision addressing a motion to dismiss, the Court emphasized that the *pro se* plaintiff alleged that the defendants specifically knew of the harm that SHU was causing to *her* mental health and did nothing. *Pender v. Peckham*, 2015 WL 4664842, at *2 (Aug. 5, 2015).[2] The non-binding trial court cases cited by CLASI do not rectify the pleading deficiencies in the Complaint.

CLASI next argues that DOC confines at least 100 inmates with a serious mental illness ("SMI") without allowing "minimum human interaction" and other therapeutic and educational programs.[3] AB at 14. CLASI now attempts to amend its Complaint by brief to conflate the number of JTVCC SHU inmates diagnosed with a SMI, likely because of the reality that most of

---

[2] Apparently in that case, the defendants' sole argument in support of dismissal was that "they are not medical providers and therefore not responsible for [the inmate's] care." Though the Commissioner was not obviously personally involved in any inmate's care, it is not the Commissioner's position that dismissal is warranted simply because Commissioner Coupe is not the medical provider. Dismissal is appropriate because sufficient facts have not been pled showing deliberate indifference.

[3] It bears noting that generally, inmates have no constitutional right to education, classification, housing, rehabilitative services, and particular treatment. *Olim v. Norwood*, 461 U.S. 238, 244-45 (1983); *Groppi v. Bosco*, 2006 WL 3610124 (3d Cir. Dec. 12, 2006) (noting that inmates have no constitutional right to participate in drug treatment programs); *Sheehan v. Beyer*, 51 F.3d 1170, 1175 (3d Cir. 1995) (holding inmates do not have liberty interest in remaining in general population); *Abraham v. Danberg*, 832 F.Supp.2d 368, 375 (D. Del. 2011) ("Prisoners have no constitutional right to drug treatment or other rehabilitation.") (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)); *Wilson v. Taylor*, 466 F.Supp.2d 567, 571-72 (D. Del. 2006) (holding inmates have no interest in housing and security classifications).

those inmates have admittedly been transferred to STU.   Originally, the Complaint acknowledged that approximately 60 of the 300 SHU inmates have been diagnosed with an SMI. Comp. at ¶ 24.  In the Answering brief, CLASI claims that the number is now "probably closer to 170." AB at 2.  This un-pled speculation is based upon a 2013 report's conclusion that 56% of all of Delaware's inmates had "mental health problems."  AB at 2, n. 2.  Beyond the fact that "close to 170 inmates in SHU have serious mental illnesses" is phrase nowhere in the Complaint, having a "mental health problem" is clearly not the same thing as being diagnosed with an SMI.[4] Furthermore, it should go without saying that a conclusion that 56% of all of Delaware's inmate population has mental health problems does not mean that 56% of inmates in any particular prison, let alone a particular building, will have mental health problems.  In any event, the present motion challenges the plausible facts in the Complaint, not unsupported extrapolations of those facts in CLASI's Answering Brief.[5]

CLASI next argues that it has pled sufficient facts establishing Commissioner Coupe's knowledge of a substantial risk of serious harm.  AB at 15.  CLASI points to: (1) NCCHC standards; (2) an APA position statement; (3) and Justice Kennedy's *dicta* in *Davis v. Ayala* where he stated his position on the effects of long-term isolation.  There are no *facts*, however, that have been pled that Commissioner Coupe was ever made aware of these materials and that

---

[4] The Court could take judicial notice of this fact, as it cannot be reasonably disputed that SMI and mental health issues are not the same. A 2012 national survey estimated that nearly 20 percent of Americans older than 18 experienced some form of mental illness. *See* http://www.pennlive.com/midstate/index.ssf/2015/07/from_patients_to_prisoners_ter.html (last visited Sept. 10, 2015).  Consistent with the report cited by CLASI, Bureau of Justice Statistics from 2005 indicate that nearly half of all prison and jail inmates had mental health problems.  Conversely, an SMI is defined by a mental illness that "causes functional impairment that substantially interferes with or limits one or more major life activities," for example schizophrenia, major depression, bipolar disorder, and other disorders that cause severe mental impairment as an SMI.  *Id.* Having a mental health problem simply is not the same as being diagnosed with an SMI, and it is doubtful CLASI would disagree with this fact.

[5] CLASI notes that the number of inmates with SMI at the other prisons is unknown. AB at 3.  The brief, as well as the Complaint, does not address any other prison and its conditions (i.e. use of restrictive housing) at all.  And the six exemplars are or were housed in JTVCC's SHU.  This lack of focus in the Complaint is at the heart of the concerns raised by the motion to dismiss.  It also is curious that, after a lengthy investigation of the SHU, Plaintiff cites only six exemplars from SHU to support the assertion that at least 100 seriously mentally ill prisoners are subject to allegedly unconstitutional conditions.

these materials, in any event, would make it clear that there was indeed a significant risk of serious harm posed to any of the SMI inmates housed in the STU or elsewhere.   CLASI recognizes that facts bridging these gaps have not been pled when it asserts that it shared its perceived deficiencies in DOC's treatment of SMI inmates with DOC's counsel and that it is "plausible" that DOC's counsel shared the information with Commissioner Coupe.  AB at 15. Even if this allegation is plausible, *the Complaint* does not specifically allege what "information" was shared or how the treatment of the exemplars was deficient.  *See* AB at 15 (citing Compl. at ¶ 64 (alleging that CLASI "discussed deficiencies in DOC's treatment…."))).   The Complaint fails to allege plausible facts showing that the Commissioner had knowledge of any significant risk of serious harm.

CLASI argues that the Complaint states facts showing that Commissioner Coupe failed to take "appropriate action" and that establishment of the STU has been an "insufficient" response to criticisms.  AB at 15.  Of course "appropriate action" and "insufficiency" are not the applicable standard for deliberate indifference,[6] and the Complaint, as noted in the Opening Brief belies the notion that DOC has taken no action.  Further, even the allegations regarding the six exemplars suggest that inmates are receiving mental health care.[7]  *See, e.g*, Compl. at ¶ 71 ("Prisoner #1 has been prescribed and dispensed many prescription drugs during his confinement, including Risperdal and Zyprexa."); ¶ 91 ("Prisoner #5 is scheduled to receive private, half-hour weekly sessions with Connections Community Support Programs, but sometimes these sessions are cancelled or rescheduled").  Thus, the Complaint itself proves that SHU inmates with mental illnesses are receiving both treatment and medication.   Although CLASI asserts that sessions are sometimes rescheduled and believes different medications

---

[6] "Appropriate action" sounds in negligence.  Under *Farmer*, CLASI must meet the burden of pleading that the Commissioner acted with a subjective recklessness *in the criminal sense*.  511 U.S. 825, 839-40 (1994).
[7] *Cf. Brown v. Plata*, 563 U.S. 493 (2011) (where prison overcrowding conditions coupled with understaffing prevented inmates from receiving care).

should be prescribed, this does not amount to deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)

Finally, CLASI complains about the Commissioner's reliance on the dictates of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that constitutional violations require personal involvement. It cites *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307 (3d Cir. 2014), arguing that *Iqbal* did not change the law that direct involvement is not required. *Id.* CLASI takes issue with the Opening Brief's noting that, as a general matter, prison officials can justifiably rely upon the expertise of medical providers in fulfilling their Eighth Amendment obligations. *See* OB at 17-18. This argument was made because of the lack of any facts pled that would have put Commissioner Coupe on notice of a particular problem of a significant risk of serious injury of any particular inmate or group of inmates. That lack of specific factual allegations, accordingly, justifies the response that, unless Commissioner Coupe is on notice of a particular risk, he – and other DOC officials – may justifiably rely upon the mental health provider. Commissioner Coupe does not contend that DOC officials can blindly rely upon medical or mental health providers in the face of specific facts brought to their attention showing constitutionally deficient care. Those facts, however, are not pled, and the Answering Brief does not address that point.

As CLASI admits, SHU inmates *are* being given mental health counseling and they are being prescribed medications. There is no allegation that the provider has reported difficulty treating SHU inmates related to the restrictive security conditions. There is no allegation that the provider has advised DOC to transfer inmates from restrictive confinement so that appropriate care can be provided. CLASI's expert disagrees with the type and quality of care provided, but that does not equate to deliberate indifference under Eighth Amendment jurisprudence.

Finally, the Atkins Declaration also undercuts the contention that Commissioner Coupe has been deliberately indifferent. The Declaration actually paints a picture of a collaborative process between CLASI and DOC. *See* Atkins Decl. at ¶ 17 (stating that the parties "periodically throughout 2014 engaged in meaningful, amicable, and sometimes productive discussions…"); *see also* ¶ 24 (noting that CLASI was advised by DOC counsel that the DOC would be seeking a

House Joint Resolution on this matter that was ultimately introduced in May of 2015.).  Portions of the Complaint, and now the Declaration, contradict the notion that the Commissioner has been deliberately indifferent to the alleged risks raised by CLASI.

## III.   CLASI'S ELEVENTH AMENDMENT REPLY IS AN EMPTY FORMALISM.

In arguing that the action is also barred by the Eleventh Amendment, the Commissioner noted, while generally courts have held that the Eleventh Amendment does not bar claims against state officials for prospective relief, the Court has cautioned that claims of this nature must be policed so that the *Young* doctrine would not result in an empty formalism.  OB at 19. Courts should avoid a "rote application" of *Ex Parte Young* and are required to look beyond the mere request for an injunction and examine the effect of the relief sought.  *Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011)

In response, CLASI resorts to that empty formalism when it implies that the Eleventh Amendment and principals of federalism are of no moment because "CLASI seeks only to require Defendant to treat seriously mentally ill inmates as required by the Eighth Amendment." AB at 18.  Of course the Eighth Amendment provides no roadmap on how a state is to deal with the task of maintaining custody over and treating SMI inmates,[8] some of whom have been convicted of serious and dangerous crimes.  CLASI's dismissive response ignores the many and varied detailed criticisms in the Complaint about how inmates are housed and treated.  The amorphous nature of the allegations in this case, undoubtedly, will require that the Court interject itself into the day-to-day operations of the most critical difficult inter-workings of Delaware's prisons.

This case is at the opposite end of the spectrum from *Young* and *Stewart*.  *Young* involved a situation where a state law directly conflicted with federal law, and the plaintiff successfully

---

[8] On the other hand, established Supreme Court precedent has made clear that claims of medical malpractice do not violate the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *see, e.g.*, *Thornton v. West*, 529 Fed. App'x 107, 110 (3d Cir. 2013) (affirming dismissal of claim by JTVCC inmate that he wasn't receiving adequate mental health care, noting that disagreement with proper medical treatment does not rise to a constitutional violation).

obtained an injunction preventing the state attorney general from taking affirmative action to enforce the invalid state law. *Stewart*, 131 S.Ct. at 1638 (discussing *Young*). In *Stewart*, the Court held that there was "no doubt" that the suit there – a claim that a refusal to produce medical records violated a specific federal statute – satisfied the "straightforward inquiry" into whether the complaint alleged an ongoing violation of federal law. *Id.* at 1639. Here, CLASI claims housing inmates in solitary confinement – with no specified duration, for no specified reason, and without being consistent as to whether the claims pertain to seriously mentally ill, those with mental health problems, or even those that are susceptible to a mental illness by being placed in restrictive housing – violates the Eighth Amendment. CLASI offers that the Commissioner can "administer the prisons however he sees fit," but in the next breath acknowledges that it will seek a "detailed order" from this Court telling the State how to do that. CLASI points to no Supreme Court case, Third Circuit case or even a consensus of other appellate courts establishing that any of the alleged facts in the Complaint have been found to violate the Eighth Amendment. The Complaint seeks to revamp the most critical aspects of housing the most dangerous inmates in Delaware in violation of the Eleventh Amendment and in derrogation of repeated cautions of restraint. *See* OB at 18.

Finally, Commissioner Coupe moved specifically to dismiss Count II, a claim brought by CLASI under Delaware's Constitution, under *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 112-16 (1983) (holding that the Eleventh Amendment bars actions against the state for state law violations, regardless of the relief sought). CLASI did not address this argument in its Answering Brief and has therefore waived any argument in opposition to dismissal of this claim. Accordingly, at a minimum, Count II, which is based upon the Delaware Constitution, must be dismissed.

## CONCLUSION

For the above reasons and those in the Opening Brief, the Complaint must be dismissed.

10

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Joseph C. Handlon
Joseph C. Handlon (#3952)
Ryan P. Connell (#5423)
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE 19801
(302) 577-8400

Dated: November 2, 2015

*Attorneys for Commissioner Robert M. Coupe*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 2, 2015, he caused the attached *Reply Brief of the Delaware Department of Correction Commissioner Robert M. Coupe in Support of His Motion to Dismiss* to be filed with the Court via CM/ECF and served electronically to the following:

David B. Stratton, Esq.
Ashleigh K. Reibach, Esq.
Christopher B. Chuff, Esq.
James G. McMillan, III, Esq.
James H. Levine, Esq.
Joanna J. Cline, Esq.
John H. Schanne, II, Esq.
Pepper Hamilton LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709

Richard H. Morse, Esq.
ACLU Delaware
100 W. 10th Street
Suite 603
Wilmington, DE 19801

Daniel G. Atkins, Esq.
Community Legal Aid Society, Inc.
100 West 10th Street
Suite 801
Wilmington, DE 19801

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Joseph C. Handlon
Joseph C. Handlon (#3952)
Deputy Attorney General
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE  19801
(302) 577-8400