IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMUNITY LEGAL AID SOCIETY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBERT M. COUPE, solely in his official ) <br> capacity as Commissioner of the Delaware ) <br> Department of Correction, ) <br> ) <br> Defendant. ) <br> ) | C.A. No. 15-688-GMS |

**MEMORANDUM**

**I. INTRODUCTION**

On August 6, 2015, Community Legal Aid Society, Inc. ("CLASI") filed this action for declaratory and injunctive relief alleging unconstitutional treatment of prisoners with serious mental illness by the Delaware Department of Correction ("DOC"). (D.I. 1.) The Complaint claims that the Commissioner of DOC, Defendant Robert M. Coupe ("Coupe"), violated the Eighth Amendment and the Delaware Constitution, Article I, Section II, by confining prisoners with mental illness in solitary confinement, without providing proper medical and mental health treatment and without allowing adequate out-of-cell time. (*Id.* at 1.) It seeks declaratory and injunctive relief. (*Id.*)[1]

---

[1] As Coupe argues in his reply brief (D.I. 13 at 10), CLASI does not address Coupe's argument that Count II, which claims violations of the Delaware Constitution, must be dismissed under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 116 (1984). Therefore, the court will treat this argument as unopposed and dismiss Count II.

On October 1, 2015, Coupe filed a motion to dismiss and supporting brief pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (D.I. 6, 7.) Coupe argues that (1) CLASI lacks standing to bring the action solely on its behalf; (2) CLASI fails to state a claim of deliberate indifference against the Commissioner Coupe; and (3) the relief CLASI seeks is barred by the Eleventh Amendment. (D.I. 7 at 2.) For the reasons stated below, the court will deny Defendants' motion to dismiss, except for Count II.

## II. BACKGROUND

According to CLASI, approximately 300 prisoners in James T. Vaughn Correctional Center's ("JTVCC") Secure Housing Unit ("SHU") were housed in small cells. These prisoners were kept in solitary confinement except for three days out of the week when they were permitted to exit their cell for an hour to exercise in solitude and shower. Approximately 100 of the 300 prisoners in SHU were prisoners diagnosed with a mental illness. (D.I. 1 at ¶ 24.) Subsequent to discussions in preparation for the litigation of this case, approximately 50 of those prisoners were moved to a newly created unit, called the Secured Transition Unit ("STU"). (D.I. 11 at 8.) CLASI alleges that the cells in SHU and STU are approximately 11 x 8 inches with four solid walls, broken only by two four-inch-wide windows. (*Id.*) Prisoners cannot control the lights, which remain lit from approximately 6:00 a.m. to 11:30 p.m. (*Id.*) They cannot participate in therapeutic or educational programs, attend religious services, hold prison jobs, or receive books from the general prison library. (D.I. 1 at ¶ 36.) Prisoners in SHU may only see a certified nurse practitioner once every three months and a therapist occasionally without meaningful follow-up. (*Id.* ¶¶ 43, 45, 47). CLASI further alleges that Coupe knows that this treatment of prisoners with serious mental illness will exacerbate their symptoms of mental illness and cause serious harm to their mental and physical health. (*Id.* ¶¶ 58, 60-62.)

2

## III. STANDARD OF REVIEW

"A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007). A district court must determine whether a Rule 12(b)(1) motion presents a "facial" attack or a "factual" attack on the claim at issue. *In re Schering Plough Corp. Intron,* 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)). Coupe's motion raises a facial attack on subject matter jurisdiction, and therefore the court will apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), by construing the alleged facts in favor of the nonmoving party. *See Constitution Party of Pennsylvania v. Aichele,* 757 F.3d 347, 357-58 (3d Cir. 2014)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). The issue for the court is "not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). As such, the touchstone of the pleading standard is plausibility. *Bistrian v. Levi,* 696 F.3d 352 365 (3d Cir. 2012).

3

## IV. DISCUSSION

### A. CLASI has standing

Coupe argues that all of CLASI's claims should be dismissed for lack of standing. (D.I. 7 at 8-14.) CLASI responds that it meets the requirements for organizational standing as the Delaware Protection and Advocacy system ("P&A") for the State of Delaware under the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 et seq. ("PAIMI"). (D.I. 11 at 5-11.) The court must consider whether CLASI meets both the statutory and constitutional requirements for standing.

In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), the Supreme Court held that an association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Comm. Workers Union Local 751 v. Brown Grp.,* 517 U.S. 544, 557-58 (1996). The first two requirements are constitutional, while the third is "prudential" and can be abrogated by statute. *Id.* The court finds that in this case, the third *Hunt* requirement is not applicable in light of the role Congress assigned under PAIMI to advocacy organizations such as CLASI. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003) (citing *United Food*, 517 U.S. at 548-49, 558) (holding that by authorizing PAIMI P&As to sue on behalf of individuals with mental illness, Congress abrogated the third, prudential standing requirement). Thus, the court will consider the first two requirements in turn.

Under *Hunt*, an organization may have standing to sue on behalf of its constituents if its constituents possess "all of the indicia of membership in an organization," 432 U.S. at 395.

4

PAIMI requires that the governing board of a PAIMI Act P&A ("PAIMI P&A") "shall be composed of ... members ... who broadly represent or are knowledgeable about the needs of the clients served by the system," where such members are defined to include "individuals who have received or are receiving mental health services and family members of such individuals." 42 U.S.C. § 10805(c)(1)(B). Also, a PAIMI P&A must:

> establish an advisory council ... which shall include ... individuals who have received or are receiving mental health services, and family members of such individuals, and at least 60 percent the membership of which shall be comprised of individuals who have received or are receiving mental health services or who are family members of such individuals; and ... which shall be chaired by an individual who has received or who is receiving mental health services or is a family member of such an individual.

*Id.* § 10805(a)(6)(B-C) *Id.* § 10805(a)(9).

In its complaint, CLASI avers that it has been Delaware's PAIMI P&A since PAIMI was enacted in 1986. (D.I. 12.) Accordingly, CLASI claims that it established an advisory council, interviewed mentally ill prisoners, evaluated the records of mentally ill prisoners with the aid of a psychiatrist, discussed deficiencies in DOC's treatment of prisoners with serious mental illness with Coupe's counsel and has members who broadly represent or are knowledgeable about the needs of mentally ill prisoners. (*Id.* at 3-4.) The court considers the facts in the light most favorable to CLASI and accepts these assertions as true.

CLASI avers that it meets the second *Hunt* factor because protecting and advocating for people with mental illness is central to CLASI's statutory purpose. (D.I. 12 at 1); 42 U.S.C. § 10801(b). The court agrees that CLASI meets the second *Hunt* requirement. Considering the facts asserted in the light most favorable to CLASI, its constituents possess the indicia of a membership organization, thereby establishing organizational standing. *See Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (holding that a PAIMI organization "may sue on behalf of its constituents like a more traditional association may sue on behalf of its members").

5

Coupe further argues that even assuming CLASI has standing to sue on behalf of Delaware's prisoner, the Complaint still fails to establish standing due to the prolific generalities and vague language of its allegations. (D.I. 13 at 2.) The court must disagree. Though the complaint does not refer to the prisoners by their real names, the facts alleged are sufficient to plausibly conclude that these are actual persons who could be adversely affected by the outcome of this litigation.[2]

### B. CLASI Raises Valid Claims of Cruel and Unusual Punishment

Coupe claims that CLASI's asserted facts are too vague to support a claim of cruel and unusual punishment under the deliberate indifference standard. (D.I. 24 at 16-18). Coupe further claims that there is a sufficient non-punitive justification for segregating inmates in restrictive quarters. (D.I. 7 at 14). CLASI contends that it has pled a claim for cruel and unusual punishment with sufficient specificity. (D.I. 11 at 11.)

An Eighth Amendment claim for relief against a prison official exists if (1) prisoners are "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official is "'deliberate[ly] indifferen[t]' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). A substantial risk of serious harm exists when prison officials fail to address serious medical needs, including those posed by mental illness. *Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 111 (3d Cir. 2007) (finding that the plaintiff's mental illness was a serious medical need where "[h]is mental illnesses were diagnosed by psychiatrists as requiring treatment"). In order to make out a claim for an Eighth Amendment violation, a defendant must prove: (1) the deprivation was "objectively, sufficiently serious" and (2) the prison official had "a sufficiently culpable state of

---

[2] The court agrees with CLASI that Coupe's failure to acknowledge the PAIMI statute or CLASI's designation as a P&A is "disingenuous" because this is publically available information. (D.I. 11 at 9.)

mind." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994) (quotation marks and citations omitted). A culpable state of mind requires that a prison official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).

CLASI insists that placing individuals with serious mental illness in solitary confinement is cruel and unusual punishment under the Eighth Amendment to the Constitution. In support of this assertion, CLASI cites to a collection of decisions from district courts across the country. *See Ind. Protection & Advocacy Services Comm'n v. Comm'r,* No. 1:08-cv- 01317-TWP-MJD, 2012 U.S. Dist. LEXIS 182974, at *60-61 (S.D. Ind., Dec. 31, 2012) (holding that the Indiana Department of Correction's practice of placing prisoners with serious mental illness in segregation constituted cruel and unusual treatment in violation of the Eighth Amendment); *Jones 'El v. Berge,* 164 F. Supp. 2d 1096, 1101-02 (W.D. Wis. 2001) (granting injunctive relief to prisoners with serious mental illness housed in a supermax prison); *Ruiz v. Johnson,* 37 F. Supp. 2d 855, 915 (S.D. Tex. 1999) (holding that conditions in the prison's administrative segregation unit violated constitutional standards when imposed on mentally-ill prisoners), rev'd on other grounds, 243 F.3d 941 (5th Cir. 2001), adhered to on remand, 154 F. Supp. 2d 975 (S.D. Tex. 2001); *Coleman v. Wilson,* 912 F. Supp. 1282, 1320-21 (E.D. Cal. 1995) ("[D]efendants' present policies and practices with respect to housing of [prisoners with serious mental disorders] in administrative segregation and in segregated housing units violate the Eighth Amendment rights of class members."); *Madrid v. Gomez,* 889 F. Supp. 1146, 1265-66 (N.D. Cal. 1995) (concluding that placing mentally-ill inmates "in the SHU is the mental equivalent of putting an asthmatic in a place with little air to breathe"), rev'd on other grounds, 190 F.3d 990 (9th Cir. 1999); *Casey v. Lewis,* 834 F. Supp. 1477, 1549-50 (D. Ariz. 1993) (finding an Eighth

Amendment violation when "Despite their knowledge of the harm to seriously mentally ill inmates, ADOC routinely assigns or transfers seriously mentally ill inmates to [segregation units]"); *Langley v. Coughlin,* 715 F. Supp. 522, 540 (S.D.N.Y. 1988) (holding that evidence of prison officials' failure to screen out from SHU "those individuals who, by virtue of their mental condition, are likely to be severely and adversely affected by placement there" plausibly rises to the level of cruel and unusual punishment.)

Although persuasive, the cases that CLASI would have the court consider are not controlling. Still, the court concludes that considering the facts in the light most favorable to CLASI, it is plausible that Coupe was aware that placing mentally ill patients in solitary confinement could deprive inmates in a manner that is "objectively, sufficiently serious" that Coupe would draw the inference that a "substantial risk of serious harm exists." *Id.* at 837; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). In short, CLASI has alleged facts which could support a viable Eighth Amendment claim.

### C. CLASI's Claims are not barred by the Eleventh Amendment

Next, Coupe argues that the complaints against him raise serious Eleventh Amendment concerns. (D.I. 7 at 18-20.) CLASI responds that it seeks prospective relief to prevent Coupe from continuing to violate the Eighth Amendment and therefore there is no Eleventh Amendment issue. (D.I. 11 at 17-18.)

Generally, the Eleventh Amendment does not bar claims for prospective relief against a state official violating federal law. *Ex parte Young*, 209 U.S. 123, 168 (1908). While Coupe argues that the Eleventh Amendment forbids suit against a state official where the state is the real substantial party in interest, Coupe fails to acknowledge "an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against

8

the State." *Id.* at 160. At issue in this case is whether Coupe is indeed violating the Constitution by restricting mentally ill inmates to solitary confinement. While Coupe characterizes the complaint as generally challenging the prison's restrictive housing policies, CLASI seeks relief regarding the solitary confinement of mentally ill patients in violation of the Eighth Amendment. Considering the facts in the light most favorable to CLASI, CLASI asserts a valid claim of cruel and unusual punishment and seeks injunctive relief to prevent Coupe from continuing to violate the Constitution. Thus, there is no Eleventh Amendment bar.

## V. CONCLUSION

For the foregoing reasons the court will deny Coupe's motion to dismiss (D.I. 6), except for Count II of the Complaint.

Dated: March 16, 2016

UNITED STATES DISTRICT COURT

9