## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COMMUNITY LEGAL AID
SOCIETY, INC.,

        Plaintiff,

        v.

ROBERT M. COUPE, solely in his
official capacity as Commissioner of
the Delaware Department of
Correction,

        Defendant.

Civil Action No. 15-688 (GMS)

## AGREEMENT AND ORDER

WHEREAS, on August 6, 2015, the Community Legal Aid Society, Inc. ("CLASI") filed a complaint, alleging *inter alia* that Robert M. Coupe ("Commissioner Coupe"), the current Commissioner of the Delaware Department of Correction (the "DOC"), failed to address adequately the serious mental health needs of DOC inmates with mental illnesses who are housed in "solitary confinement," as that phrase is used in the Complaint;

WHEREAS, CLASI named Commissioner Coupe solely in his official capacity;

WHEREAS, Commissioner Coupe moved to dismiss the Complaint;

#40350721 v1

WHEREAS, the Court dismissed Count II of the Complaint, which count alleged a violation of Article I, Section 11, of the Delaware Constitution, but denied the motion as to CLASI's claim alleging a violation of the Eighth Amendment of the United States Constitution;

WHEREAS, following an exchange of documents and written discovery, the parties agreed to a stay of discovery, requested and received several extension of the Court's deadlines, and engaged in extensive settlement discussions, including several mediation sessions and other meetings and conferences by and between the parties, including conferences between the parties' expert witnesses;

WHEREAS, the parties, without conceding any infirmity in the claims or defenses, have in good faith negotiated the terms of this Stipulation and Order in order, *inter alia,* to provide additional out-of-cell time for inmates such as those inmates who at the time of the filing of the Complaint were in Restrictive Housing, particularly for those inmates with mental illnesses, and to provide for additional and improved mental health care;

WHEREAS, Commissioner Coupe denies the allegations and claims in the Complaint;

NOW, THEREFORE, AND SUBJECT TO APPROVAL OF THE COURT, IT IS HEREBY STIPULATED AND AGREED by and between the parties, as follows:

#40350721 v1

1. **Improvement of Mental Health Care for Inmates**

   A.   The Delaware Department of Correction ("**DOC**") has adopted a definition of serious mental illness ("**SMI**").  That definition appears in the glossary of terms and definitions for DOC Policy Chapter 11 (Health Services).  The DOC shall adhere to this definition.

   B.   The DOC is in the process of implementing a behavioral health roster system to identify every inmate as either SMI, mentally ill but not SMI ("**MI**"), or not mentally ill ("**NMI**") and record the level of care indicated for each SMI or MI inmate.  The DOC shall implement a policy mandating the use of that system and which (a) establishes criteria for inclusion on and discharge from the DOC's behavior health roster (the "**Roster**"), (b) includes a mechanism for reviewing and altering the level of care needed for each SMI or MI inmate and (c) requires tracking of SMI and MI inmates and their security levels. This policy shall be finalized and shared with CLASI by August 15, 2016. This policy shall be implemented by October 31, 2016.

   C.   The DOC, by policy and practice, already conducts mental health evaluations/assessments within 72 hours of placement in restrictive housing.  DOC Policy 11-E-09 requires such assessment by a qualified MH professional ("**QMHP**") in a confidential setting within 24 hours of placement.  The DOC shall adhere to this policy.

   D.   The DOC shall strengthen its existing policy, Bureau of Prisons Policy 4.2, to preclude the imposition of disciplinary sanctions for a Class 1 violation on any inmate appearing on the Roster without prior consideration of (a) mental health issues that may have contributed to the conduct in question and (b) to the extent permissible under applicable ethical and professional standards, including standards promulgated by the American Correctional Association ("ACA") and the National Commission on Correctional Health Care, input from a QMHP. DOC has developed the form attached hereto as Exhibit A for this purpose. It must be used by the QMHP to document the QMHP's input and by the hearing officer to document the hearing officer's consideration of the QMPH's input and the impact mental health considerations have on disciplinary decisions.  The DOC must require the use of the form by hearing officers for all disciplinary hearings for inmates on the Roster.

E.   The DOC, per DOC Policy 14.15, already prohibits the use of alternative meal plans ("**AMPs**") as a disciplinary sanction and limits the use of AMPs to manage disruptive behavior that "threaten[s] the safety and security of the institution, staff members, and other offenders." The DOC must adhere to this policy.

F.   (1)   The DOC, per DOC Policy 11-G-02.1, already requires mental health care to be provided in accordance with a mental health treatment plan. The DOC must adhere to this policy.

(2)   Medication management appointments in high security settings shall occur at 90-day intervals or more frequently as determined to be required by the clinician. These appointments shall occur in confidential treatment space and not at the cell front.

(3)   When a mental health assessment is necessary as a result of a cell front contact, such assessment shall be conducted in a confidential setting.

(4)   Mental health rounds of inmates on the Roster in Restrictive Housing will be performed once a week. For the purposes of this agreement, Restrictive Housing is housing intended to separate inmates from the General Population for disciplinary, classification, protective custody, or administrative reasons. This definition is not to be used outside the context of this Agreement and Order.

G.   The DOC shall make all mental health services in the continuum of care, outpatient through inpatient, accessible to all inmates in need of such services.

H.   The DOC shall create a Special Needs Unit ("SNU") at BWCI utilizing existing space at BWCI. If DOC determines that additional staffing is necessary to operate the unit, it shall prepare and provide to CLASI by October 15, 2016 a plan detailing the staffing changes needed to operate a SNU at BWCI and setting forth a date by which the unit will become operational. The DOC shall request through the annual budget process any funding necessary to open a Special Needs Unit at BWCI. Prior to the establishment of the SNU at BWCI, DOC shall designate sufficient treatment beds at BWCI for women needing residential level of mental health care.

I.    The DOC has developed and shall require its mental health providers
      to utilize a behavior health module within its electronic health record
      system as soon as it is tested and operational.  The module shall be
      operational no later than August 31, 2016.

J.    The DOC shall develop and implement clinical guidelines that set
      minimum standards and expectations for group treatment and
      individual counseling to be provided to SMI and MI inmates in
      accordance with the Restrictive Housing Policy (as defined below).
      The DOC shall, by official policy, require adherence to the guidelines.
      The DOC has invited CLASI to participate in the development of
      guidelines. The parties have begun work on the guidelines, and shall
      make good faith efforts to complete and reach agreement on mutually
      acceptable guidelines by September 30, 2016.

K.    To the extent necessary to comply with this  Agreement and Order,
      the DOC shall, no later than July 1, 2017 amend its contract with its
      existing mental health vendor to provide increased mental health
      staffing as necessary to provide the expanded services contemplated
      by this Agreement and Order, if that contract will remain in effect
      after June 30, 2017. DOC contracts with subsequent mental health
      vendors shall provide for the mental health staffing necessary to
      provide the expanded services required by this Agreement and Order.
      Staffing ratios shall be as indicated on Exhibit B hereto.

L.    The DOC shall increase its security and other staff to the extent
      necessary to maintain security and operations and provide mental
      health and other services required by this Agreement and Order.

M.    Subject to receipt of necessary approvals or permits from New Castle
      County and the Delaware Department of Natural Resources and
      Environmental Control, the DOC shall construct at James T. Vaughn
      Correctional Center ("JTVCC") a building that shall be utilized to
      afford additional programing and treatment space for maximum
      security inmates in Restrictive Housing.

N.    The DOC shall develop a plan to maximize the use of existing space
      at JTVCC to provide treatment to SMI and MI inmates under this
      Agreement and Order.  The plan has been shared with CLASI.  The

DOC shall make good faith efforts to implement the plan by November 30, 2016 with existing resources.

O.    The DOC shall utilize chairs and equipment that will safely allow potentially dangerous individuals to attend and participate in group therapy.  The DOC shall strive to limit the use of restraints, subject to safety and security concerns, particularly for those inmates who are preparing for transition back into general population.  The DOC shall implement these practices by November 30, 2016.

P.    The DOC has established a multidisciplinary team to study and make findings and recommendations with respect to the housing accommodations, treatment and programing for youthful offenders, and has invited CLASI to participate in the study.  The multidisciplinary team has begun work on this project, and shall make good faith efforts to make findings and recommendations by October 31, 2016. DOC shall determine by December 31, 2016 what recommendations will be implemented and direct implementation in a timely manner.

Q.    The DOC shall work with Delaware courts to reduce the number of direct court commitments to, and increase available bed space at, the Jane E. Mitchell Building at the Delaware Psychiatric Center (the "**Mitchell Building**"), currently owned and operated by the Delaware Department of Health and Social Services.  The DOC shall continue to utilize the Mitchell Building as an inpatient facility for appropriate SMI inmates in accordance with DOC Policy 11-D-05.1.

R.    DOC security staff shall receive training in how to work with mentally ill inmates.  The DOC shall provide an 8-hour mental health first aid "train-the-trainer" course approved by the National Alliance on Mental Illness to a select group of potential DOC trainers by November 30, 2016.  The DOC shall include mental health first aid training as part of the DOC's Correctional Employee Initial Training program to all incoming correctional officer classes starting after November 30, 2016.  The DOC shall incorporate mental health first aid training as part of the DOC's annual training for existing officers. The DOC shall provide a 35-hour Crisis Intervention Training program to a focused group of correctional officers and supervisors by November 30, 2016.  The DOC shall provide CLASI with any written

        details pertaining to mental health training initiatives that it has not already provided to CLASI by August 31, 2016.

S.    The DOC provides the staff of its mental health vendor with training in safety and security issues as part of new employee orientation.  The DOC shall continue to offer such training.

T.    The DOC shall expand its existing mental health related Continuous Quality Improvement ("CQI") activities to cover the behavior health Roster system described above. CQI will be used to ensure that the Roster system referred to in Section 1.B hereof is working as provided by official policy.

## 2.    Improving Conditions of Confinement and Other Aspects of Restrictive Housing

A.    The DOC shall implement a policy under which all NMI and MI inmates sanctioned to disciplinary detention shall be offered[1] five (5) hours of unstructured recreation[2] per week. SMI inmates shall receive the out-of-cell time required by § 2.D below.

B.    The DOC shall implement a policy that prevents, to the maximum extent possible, the release of inmates to the "street" directly from Restrictive Housing, except where such release is unavoidable due to a court order.  For purposes of this Agreement and Order, release to the street does not include release to (1) the custody of another state, U.S. territory or country, (2) the Delaware Psychiatric Center, or (3) a

---

[1] As used in Sections 2.A and 2.D hereof, "offered" means hours that are actually offered where the offer is not nullified.

[2] The term, "unstructured recreation," as used in this Agreement and Order, may include indoor and outdoor recreation, gymnasium, religious practices outside the cell, library, law library, time in the dayroom with other inmates, board games, cards, reading, TV or other leisure activities, telephone, or visitation, but does not include meals, showers, or appointments. Unstructured recreation shall be subject to weather, staffing, scheduling and safety and health concerns.  Missed recreation time, due to staff shortages, lockdowns, or scheduling conflicts related to medical or other appointments, will not be "made up." DOC shall not intentionally create conflicts between unstructured recreation and appointments. Unstructured recreation normally will be provided five (5) days per week in one-hour increments.  Nothing in this Agreement and Order is intended to imply that inmates in disciplinary detention are entitled to any particular unstructured recreation.

long-term care or similar inpatient facility.  The DOC shall offer discharge and planning services to inmates in restrictive housing who are within sixty (60) days of their anticipated release to the street.  The DOC shall provide CLASI with written details of such services by August 31, 2016.

C.   The DOC shall continue to offer voluntary evidence-based correspondence programing to all inmates in Restrictive Housing based on each inmate's individualized needs.  The DOC shall establish a multidisciplinary team to study and make findings and recommendations with respect to the need for and feasibility of adding additional programing, including programs offered in a group setting.  The DOC shall invite CLASI to participate in the study.  The multidisciplinary team shall begin work on the project by September 1, 2016 and shall make good faith efforts to make findings and recommendations by November 30, 2016.

D.   The DOC shall develop and implement a policy that will increase out-of-cell-time for all inmates in non-disciplinary Restrictive Housing as follows (the "**Restrictive Housing Policy**")

- NMI inmates shall be offered 17.5 hours of unstructured recreation per week;

- MI inmates shall be offered 17.5 hours of unstructured recreation per week plus additional out-of-cell time for structured therapeutic activities[3] required under each MI inmate's individualized mental health treatment plan ("**ITP**");

---

[3] The term "structured therapeutic activities," as used in this Order and Agreement, includes group treatment and individual counseling (as determined by each inmate's individualized treatment plan).  Structured therapeutic activities shall be subject to staffing, scheduling and safety and health concerns.  Missed therapeutic activities, whether due to staff shortages, lockdowns, scheduling conflicts related to medical or other appointments, *etc.*, will not be "made up."  DOC shall not intentionally create conflicts between structured therapeutic activities and appointments. Structured therapeutic activities normally will be provided five (5) days per week.  Such activities will be provided in one-hour or other appropriate increments.

- SMI inmates who do not require a residential treatment unit ("**RTU**") level of care will be offered 17.5 hours of unstructured recreation per week plus additional out-of-cell time for structured therapeutic activities required under each SMI inmate's ITP; and

- SMI inmates who require an RTU level of care shall receive 10 hours of structured out of cell therapeutic activity and 10 hours of unstructured out of cell unstructured recreation per week irrespective of their housing unit or security level.  They will get the 10 hours of structured out of cell therapeutic activities and 10 hours of unstructured recreation in an RTU or in segregation if that is where they are located.

For the purposes of this section, the phrase "require a residential treatment unit (or "RTU") level of care" means the inmate is significantly functionally impaired ("**SFI**") and currently symptomatic and meets the criteria for placement in BH5 level of care as set forth in Exhibit C.

D.1.   The DOC presently anticipates it will be able to provide the unstructured recreation without additional staffing or appropriations. The DOC shall inform CLASI no later than October 15, 2016 whether additional staffing or appropriations are necessary to fully implement the policy.

E.   The DOC shall develop and require the use of a tracking form to record structured therapeutic activity and unstructured recreation provided under the Restrictive Housing Policy.  The DOC shall provide CLASI with a copy of the form by Sept. 15, 2016.  Exhibit D lists information DOC will track and how it will track that information.

F.   Inmates who are placed on protective custody, and who are housed in Restrictive Housing, shall receive structured therapeutic activity and unstructured recreation out-of-cell time as provided in the Restrictive Housing Policy.

G.     The DOC shall not use the cell at Howard R. Young Correctional Institution that presently lacks a commode for psychiatric close observation ("PCO") or other housing purposes until the cell is fitted with a toilet system.

H.     The DOC shall implement a policy that will permit female inmates placed on PCO to obtain menstrual products –and PCO inmates of all genders toilet paper-- absent safety or security concerns resulting from misuse of the products, such as putting them into electrical sockets or swallowing parts of them, which must be documented by the DOC.

I.     The DOC shall revise its existing PCO policy to permit inmates placed on PCO status to access reading and/or writing materials, including therapeutic materials if approved by a psychologist, psychiatrist or nurse practitioner.  The policy will permit security staff to deny such access only if safety or security concerns warrant a security veto.  The DOC shall develop and require the use of a form to guide the decision making with respect to and document any such security veto and shall provide such form to CLASI by August 31, 2016.

J.     The DOC shall establish a multidisciplinary team to study and make findings and recommendations with respect to "Quality of Life" and similar Restrictive Housing policies and procedures across all Level 5 facilities.  The DOC shall invite CLASI to comment on the team's recommendations.  The DOC shall make good faith efforts to implement by November 30, 2016 those recommendations that are accepted by the DOC.

3.     **Reducing the Length of Disciplinary Sanctions and the Use of Other Forms of Restrictive Housing**

A.     No inmate may serve a disciplinary sanction in excess of fifteen (15) consecutive days in disciplinary detention for any single rule violation, or any series of related rule violations.  Inmates who receive multiple disciplinary sanctions in a period of time, and who have demonstrated a pattern of disruptive or unsafe behavior, shall be managed in accordance with existing classification, housing and other policies and operating procedures.  The policy implementing this provision will require a break of at least fifteen (15) days between

disciplinary detention sanctions.  SMI inmates will not be placed in disciplinary detention for any period of time unless the inmate presents an immediate danger and there is no reasonable alternative.

B.    The DOC shall implement a policy that requires the wardens to issue semiannual reports to the Chief of the Bureau of Prisons on the status of any inmate in restrictive housing in excess of six (6) months. The reports shall include the reasons supporting each such inmate's placement in non-disciplinary Restrictive Housing and the reasons for continued placement in non-disciplinary Restrictive Housing.  The Chief of the Bureau of Prisons shall review and approve the reports and submit final reports to the Office of the Commissioner.  The policy shall require that a multidisciplinary team review every ninety (90) days the status of any inmate in non-disciplinary Restrictive Housing.

## 4.    Enforcement

A.    Information

      i.    Within 90 days of entry of this Agreement and Order by the Court (the "Effective Date"), DOC shall advise CLASI, in writing, of the actions it has taken to satisfy the requirements of this Agreement and Order, and of its plan for satisfying the requirements of the Agreement and Order that have not been satisfied.  DOC shall use all reasonable efforts to obtain necessary funding and comply with all terms of this Agreement and Order expeditiously, and in any event, it shall comply with Sections 1.H., 1.K., 1.L., and Sections 1.A.1. and 1.A.2 of Exhibit D by July 2018 and with all other terms within one year of the Effective Date. As to Section 1.M., DOC will keep CLASI advised of its progress and will work reasonably to complete capital projects as expeditiously as possible.

      ii.    In addition to any tracking required by Sections 1.B and 1.T of Agreement and Order, DOC shall track the information described on Exhibit D as described in Exhibit D.

      iii.    At reasonable times and upon reasonable notice, which need not be more than 30 days, DOC shall provide to CLASI copies of documents or things reasonably requested by CLASI for the

purpose of determining whether DOC is complying with this Agreement and Order.

iv.   For the purpose of ascertaining DOC's compliance with this Agreement and Order, CLASI and its designee shall have reasonable access to (1) staff of DOC and its medical and mental health contractors (including the right to meet with them) through DOC counsel, (2) any facility where inmates are held in Restrictive Housing, (3) all relevant documents in DOC's possession, custody or control, including the medical and mental health records of inmates , and (4) the right to meet with inmates privately.  Access under (1) – (4) shall terminate upon the termination of this Agreement and Order only to the extent that this paragraph provides CLASI rights it does not otherwise have.

B.   Modification.

i.   This Agreement and Order may be modified only by written consent of the undersigned parties or their successors, approved by the Court, or as provided in Sections 4.B.ii – iii hereof.  Any changes or amendments to the Agreement and Order shall be submitted to the Court for purposes of the entry of a Court Order to reflect the revised agreement.

ii.   The parties recognize DOC believes it needs or may need additional funding to comply with Sections 1.H.; 1.K.; 1.L.; 1.M.; Exhibit D, §§1.A.1. & 1.A.2 above.  They also recognize that DOC will be unable to make certain decisions until after August 8, 2016, the date on which the parties agreed to the terms of this Agreement and Order, and will be providing CLASI with documents reflecting those decisions after August 8, 2016, and that CLASI may disagree with those decisions and believe it is entitled to further relief as a result. For those items as to which DOC believes additional funding is required, such funding will be included in the draft recommended budget of the current administration for fiscal year 2017-2018.  The failure of the General Assembly to provide funding, notwithstanding DOC's best efforts, for the activities identified in Sections1.H.; 1.K.; 1.L.; 1.M.; Exhibit D, §§1.A.1. & 1.A.2

of this Agreement and Order shall not be deemed a violation of a federal right or a breach of this Agreement and Order prior to DOC having an opportunity to move to modify this Agreement and Order. In order to reach a settlement now, they agree that either party may request the Court to approve modifications of the following provisions of this Agreement and Order: 1.H.; 1.K.; 1.L.; 1.M.; Exhibit D, §§1.A.1. & 1.A.2; and that in connection with any such request, neither party shall contend that it is entitled to a presumption by reason of this Agreement and Order. The Eighth Amendment shall be the applicable standard if either party seeks a modification of this Agreement and Order because requested funding relating to 1.H.; 1.K.; 1.L.; 1.M.; Exhibit D, §§1.A.1. & 1.A.2 has not been obtained.

iii.   CLASI shall have the right to seek modification of this Agreement and Order as a result of the documents referred to in sections 1.B, 1.H, 1.J, 1.N, 1.P, 1.R, 2.B, 2.C, 2.D, 2.E, 2.I, and 2.J hereof, after it receives those documents. The Eighth Amendment shall be the applicable standard if CLASI seeks a modification of this Agreement and Order as a result of the documents referred to in sections 1.B, 1.H, 1.J, 1.N, 1.P, 1.R, 2.B, 2.C, 2.D, 2.E, 2.I, and 2.J hereof.

iv.   The parties consent to the Court's jurisdiction for enforcement or modification of this Agreement and Order.

C.   Reasonable Means for the Purposes of Enforcement

If CLASI has reasonable grounds to believe that DOC is in material breach of this Agreement and Order, it shall notify DOC of its concerns by providing a description of these concerns in writing to counsel for DOC and the Commissioner of DOC, or his designee. Within 30 days of the notification, DOC shall respond in writing. If that does not resolve the matter to CLASI's satisfaction, representatives of DOC and CLASI shall meet to attempt in good faith to resolve the dispute and request mediation, if necessary.

D.   Attorney Fees and Costs. DOC shall pay CLASI or its designee(s) $500,000 within 30 days of the Effective Date.

E.   Court Enforcement.  Upon execution of this Agreement and Order, the Delaware Department of Correction shall be substituted for Commissioner Coupe as the defendant, and this Agreement and Order shall be entered as an Order of the United States District Court for the District of Delaware. Following this Court's decision on CLASI's motion for attorney's fees and costs, to be filed within 30 days of the Effective Date, the above-captioned lawsuit shall then be dismissed, without prejudice to (1) a filing by plaintiff, in the event of a material breach of this Agreement and Order by the DOC, and the inability of the parties to cure the breach through Reasonable Means, or (2) a filing by a party in accordance with Sections 4. B. ii or iii hereof. The issues before the Court in the event of a filing under Clause (1) hereof shall be limited to the enforcement of this Agreement and Order through appropriate sanctions, in the event the Court finds that a material breach of its conditions has occurred.

F.   The provisions of this Agreement and Order apply to any DOC facility where inmates are in Restrictive Housing during the term of this Agreement and Order.

G.   DOC compliance with a court order pursuant to 11 Del. C. § 3902 would not constitute a violation of this Agreement and Order.

H.   Release.  Except as otherwise indicated in this Agreement and Order, Plaintiff hereby unconditionally releases and forever discharges the Defendant and DOC and its officers, agents, employees, former employees, attorneys, and vendors from any and all claims, demands, actions, causes of action, and suits, at law, in equity or otherwise, attorneys' fees, costs, obligations, damages, and liabilities of every kind, nature and description whatsoever asserted in the above-captioned action, whether individual or derivative, state or federal, which Plaintiff, has, had or which it hereinafter can, shall or may have for, upon or by reason of facts, conditions and events described in the pleadings in this action. This release shall not extend to limit Plaintiff or its successors from representing inmates in claims not within the scope of pleadings in this action.

I.   Defendants deny all the allegations in the Complaint filed in this case.  Defendant's stipulation to this Agreement and Order does not constitute and shall not be construed or interpreted as an admission of

any wrongdoing or liability by any party and shall not be admissible or introduced in any subsequent dispute, case, litigation or matter for the purpose of establishing any standard or breach of any duty owed by the DOC, its officers, agents, employees, former employees, attorneys, and vendors. This limitation shall not apply on a motion by Plaintiff or is successor to enforce this Agreement and Order or seeking attorney's fees and costs, or on a motion by either party under Sections 4.B.ii. and iii hereof.  No inmate or person or entity other than Plaintiff or Plaintiff's successor shall have the right or standing to seek to enforce any term of this Agreement and Order.

J.      Court Approval.  This Agreement and Order is not effective until approved by the Court.  All parties and their counsel will use their best efforts to obtain Court approval.

K.      Termination.  Unless otherwise agreed by the parties with approval of the Court, this Agreement and Order shall terminate five (5) years from the Effective Date.

AGREED TO:

_____ 8/31/16

Community Legal Aid Society, Inc.
Daniel G. Atkins, Executive Director

_____ 8/31/2016

Robert M. Coupe, Commissioner
Delaware Department of Correction

/s/ Joanna J. Cline

David B. Stratton (Del. Bar. No. 960)
Joanna J. Cline (Del. Bar No. 5873)
James G. McMillan (Del. Bar No. 3979)
John H. Schanne, II (Del. Bar No. 5260)
James H.S. Levine (Del. Bar No. 5355)
Christopher B. Chuff (Del. Bar No. 5729)
Ashleigh K. Reibach (Del. Bar No. 6096)
PEPPER HAMILTON LLP
Hercules Plazza, Suite 5100
1313 N. Market Street
P.O. Box 1709

/s/ Joseph C. Handlon

Joseph C. Handlon (Del. Bar. No. 3952)
Jason W. Staib (Del. Bar No. 3779)
Ryan P. Connell (Del. Bar No. 5423)
State of Delaware
Department of Justice
Carvel State Building, 6th Floor
820 N. French Street
Wilmington, Delaware  19801
Telephone: (302) 577-8862
Facsimile: (302) 421-8390
joseph.handlon@state.de.us
jason.staib@state.de.us
ryan.connell@state.de.us

#40350721 v1

Page **16** of **17**

Wilmington, DE  19801-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
*strattond@pepperlaw.com*
*clinej@pepperlaw.com*
*mcmillaj@pepperlaw.com*
*levinejh@pepperlaw.com*
*schannej@pepperlaw.com*
*chuffc@pepperlaw.com*
*reibacha@pepperlaw.com*

Richard H. Morse (Del. Bar No. 531)
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION OF DELAW
100 West 10th Street, Suite 706
Wilmington, DE  19801
Telephone: (302) 654-5326, Ext. 103
Facsimile: (302) 654-3689
*rmorse@aclu-de.org*

Daniel G. Atkins (Del. Bar No. 2970)
Executive Director
COMMUNITY LEGAL AID
SOCIETY, INC.
100 West 10th Street, Suite 801
Wilmington, DE  19801-6605
Telephone: (302) 575-0660, Ext. 229
Facsimile: (302) 575-0840
*datkins@declasi.org*

Kyle A. Dolinsky
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4907
Facsimile: (800) 641-6357
*dolinskyk@pepperlaw.com*

*Counsel for Defendant Robert M. Coupe*

#40350721 v1

Page **17** of **17**

*Counsel for Plaintiff Community Legal*
*Aid Society, Inc.*

.

Dated:  August ____ , 2016                    Dated:  August ____ , 2016

SO ORDERED this _____ day of _____, 2016

_____
United States District Judge

#40350721 v1

# EXHIBIT A

Attachment #2

# Disciplinary Mental Health Assessment Form

| | |
|---|---|
| **DISCIPLINARY Case No.:** | |

**Offender Name:**

| | |
|---|---|
| **Offender S.B.I. Number:** | |

**Date Request Received:**                    **Date Completed and Submitted (Must be within 72 hours):**

## SECTION I

### TO BE COMPLETED BY A QUALIFIED MENTAL HEALTH PROFESSIONAL

- Is the offender currently on a mental health case load? ☐Yes ☐No
- What is the current mental health identification of the offender (SMI. MI, NMI)? ☐ SMI ☐ MI ☐ NMI
- Does the offender know where he/she is? ☐Yes ☐No
- Does the offender know what date it is? ☐Yes ☐No
- Does the offender know why he/she is seeing a hearing officer? ☐Yes ☐No
- Is the offender appropriately dressed? ☐Yes ☐No
- Is the offender able to speak coherently? ☐Yes ☐No
- Are the offender's statements logical and organized? ☐Yes ☐No
- Does the offender avoid eye contact? ☐Yes ☐No
- Should the offender be referred for Mental Health Services evaluation? ☐Yes ☐No

## SECTION II

### TO BE COMPLETED BY A QUALIFIED MENTAL HEALTH PROFESSIONAL

1. Have you, the Qualified Mental Health Professional, reviewed the incident/charged offenses and BOP Policy 4.2 Rules of Conduct for an understanding of the disciplinary process regarding offenses contained within the disciplinary report? ☐Yes ☐No

2. Does the offender have the capacity to participate in the hearing? ☐Yes ☐No
   If **NO**, why does the offender not have the capacity to participate?

3. Would the offender need assistance to participate in a disciplinary hearing? If **YES**, what assistance would be needed and/or recommended? ☐Yes ☐No

4. Are there any medication issues that may have impacted the behavior of the offender related to this incident?  If **YES**, please describe ☐Yes ☐No

5. Are there mental health issues that may have impacted the offender's behavior at the time of the charge?  If **YES**, briefly describe those issues. ☐Yes ☐No

6. Are there mental health issues that should be considered regarding disposition of the offender if found guilty?  If **YES**, briefly describe those issues and their possible relation to the disposition. ☐Yes ☐No

**QMHP Member of Treatment Team Name/Title/Signature:**                    **Date:**

**_NOTE:_** Mental Health is responsible to scan the completed form into iCHRT and to document the completion of the form in the progress notes of the offender to include the date received and returned.

Attachment #2

**SECTION III**

**TO BE COMPLETED BY HEARING OFFICER**

1.  Does the offender appear to have the capacity to participate in the hearing?                      ☐Yes  ☐No

2.  Has the Hearing Officer considered the recommendation of the treatment team
    at the following:

    - Disciplinary Hearing                                                                            ☐Yes  ☐No
    - When rendering a decision                                                                        ☐Yes  ☐No
    - When determining the sanction                                                                    ☐Yes  ☐No
    - At imposition of the sanction                                                                    ☐Yes  ☐No

**Hearing Officer:**                                                          **Date:**

**SECTION IV**

**TO BE COMPLETED BY APPEAL HEARING OFFICER**

1.  Does the offender appear to have the capacity to participate in the appeal hearing?               ☐Yes  ☐No

2.  Has the Appeal Hearing Officer considered the recommendation of the treatment team
    at the following:

    - In reviewing the incident and charges                                                            ☐Yes  ☐No
    - In reviewing the appeal                                                                          ☐Yes  ☐No
    - When rendering a decision                                                                        ☐Yes  ☐No
    - When determining the sanction                                                                    ☐Yes  ☐No

**Appeal Hearing Officer:**                                                   **Date:**

**_NOTE:_** The completed form shall be scanned into DACS as part of the Disciplinary Record for the offender by the Hearing Officer prior to the closing of the disciplinary.

# EXHIBIT B

**Exhibit B**

**Mental Health Staffing Ratios**

Psychiatrists or certified psychiatric nurse practitioners
    1 Psychiatrist or certified psychiatric nurse practitioner ("CRNP"): 250 outpatient inmates on psychotropic medication (whether or not SMI)

    1 Psychiatrist: 50 inmates in residential treatment setting

    (Preference for psychiatrist in RTU setting but if a nurse practitioner is utilized, it must be a certified psychiatric nurse practitioner, unless that is not possible, in which it may be a nurse practitioner who qualifies for an Exception)


RTU level of care:
1 FTE Activity Technician or equivalent: 30 RTU beds
1 FTE Qualified Mental Health Professional (QMHP):30 RTU beds
1 FTE clerical for RTU

(Note: This does not include the medical nursing staff specific to the RTU)

Outpatient level of care:
1 FTE QMHP (licensed):75 inmates on outpatient caseload (includes crisis care coverage for these same inmates)
1 FTE clerical support for the outpatient program

Reception:
1 FTE psychiatrist for every 8.5 referrals per day five days a week.


*Notes:*

The four certified family practice nurse practitioners who currently [perform certified psychiatric nurse practitioner services] for DOC and who are identified to CLASI prior to execution of the Agreement and Order qualify for Exceptions. Any new certified family practice nurse practitioners hired to perform certified psychiatric nurse practitioner services for DOC will qualify for an Exception if they have a minimum of 5 years practicing as a registered nurse in the behavioral health field prior to earning the family practice nurse practitioner status, and are currently enrolled in a specialization program that culminates in a psychiatric certification as recognized by the appropriate Delaware regulatory authority, provided that they obtain the psychiatric certification from the appropriate Delaware within two years of being hired.

DOC will initially determine the number of FTE psychiatrists for by using the number of referrals provided by Dr. Timme. In order to determine whether that number of referrals per day (used to determine the number of FTE's needed, to which the 8.5 ratio will be applied) is correct,

DOC will track the number of intakes, the number of intakes that are referred to psychiatrists, the percentage of referrals who are seen on a timely basis and the percentage who are not. That information will be used to adjust the number of psychiatrist FTE's for intake, if necessary.

1 FTE MHP for every 25 MH screens per day

1 FTE clerical support for the reception/intake process

*Notes:*

*The preceding staffing ratio recommendations include ONLY line staff providing direct service. The recommendations do NOT include any director or clinical administrator positions whether at headquarters or the institutional level.*

*In every instance in which QMPH staffing ratios are provided, the assumption is that the MHP is licensed and therefore able to function independently. If unlicensed staff are utilized, the overall staffing needs must be adjusted to account for clinical supervision of the unlicensed staff.*

# EXHIBIT C

Exhibit C

| STATE OF DELAWARE DEPARTMENT OF CORRECTION | POLICY NUMBER G-04 | PAGE NUMBER 3 OF 5 |
|---|---|---|
| SUBJECT: Mental Health Services | | |

3. The DDOC will utilize a Behavioral Health Level-of-Care model to match the the appropriate intervention to the offenders' need. Regular screenings will be conducted in accordance with chapter 1 of this policy to promote a continuum of care to meet the offender's needs throughout his or her incarceration.

4. The QMHP will initially identify the offender's level of care after the completion of the initial CMHE and update throughout the offender's incarceration in accordance with the individualized treatment plan.   Levels of care shall be designated according to the following:

    a. **BH1 Level of Care:** *No history and no current need* - The offender has no known behavioral health treatment history and has been assessed to have no current behavioral health condition.

    b. **BH2 Level of Care:** *Only history and no current need* - The offender has a history of behavioral health treatment but has been assessed to have no current need for services.

    c. **BH3 Levels of Care:** *Outpatient Services* – The offender has been assessed and meets the following criteria:

      1. The offender has a history of behavioral health treatment, and

      2. The offender has experienced, or may be at risk to experience mild psychological distress or transient psychiatric disorder(s) that can be treated with outpatient psychological interventions.

      3. If the offender meets the above criteria based on the QMHP's clinical evaluation, the offender will shall be assigned to one of the following levels of care:

        i.   BH3a Level of Care: The offender receives individual therapy and psychiatric treatment for outpatient services.

        ii.   BH3b Level of Care: The offender receives only individual therapy for outpatient services.

        iii.   BH3c Level of Care: The offender receives only psychiatric services for outpatient services.

    d. **BH4 Level of Care:** *Intensive Outpatient Services* - The offender has been assessed and meets the following criteria:

      1. The offender meets the criteria of BH3

      2. The offender has been assessed to require increased hours of highly

| STATE OF DELAWARE DEPARTMENT OF CORRECTION | POLICY NUMBER G-04 | PAGE NUMBER 4 OF 5 |
|---|---|---|
| SUBJECT: Mental Health Services | | |

structured outpatient therapy to include group therapy and individual therapy on a weekly basis.

3. The offender has been assessed to require services as an intervention prior to residential treatment or as a step down from residential treatment. The offender will receive the following services in intensive outpatient services:

    i. Psychotherapy services as available and clinically indicated, to include brief, long-term, supportive, or intensive approaches.

    ii. The offender will receive a minimum of 9 hours of individual/group therapy per week generally for a 12 week course of treatment.

    iii. The offender will receive an assessment after the completion of intensive outpatient services to determine the next appropriate level of care.

e. **BH5 Level of Care:** *Residential Treatment* - The offender meets criteria for BH4 and has been assessed to have significant functional impairment requiring placement in a residential care unit. The unit will provide a safe and therapeutic environment focused on symptom stabilization, improving activities of daily living, and programming with comprehensive wrap-a- round services from a multidisciplinary team consisting of psychiatric providers, psychologists, medical personnel, clinicians and other behavioral health professionals.

f. **BH6 Level of Care -** *Inpatient Hospitalization* – The offender is referred to the Treatment Review Committee to consider for inpatient hospitalization. The following criteria must be met:

1. The offender requires treatment beyond that available within the Department of Correction

2. The offender meets the criteria for civil commitment were he or she not incarcerated, as defined by state law and

3. The Treatment Review Committee (TRC) will convene per DOC Policy.

5. The criteria for inclusion on the treatment services log shall be offenders categorized as BH3a, BH3b, BH3c, BH4, BH5, and BH6 level of care during their current incarceration.

# EXHIBIT D

**Exhibit D**

1.      **Tracking and Reporting Obligations**

   A.      **Tracking Obligations**. The DOC's tracking obligations under
           this Agreement and Order shall commence on January 15,
           2017. The DOC shall have only the following tracking
           obligations:

      1.      The DOC shall make enhancements to its existing
              electronic corrections system, Delaware Automated
              Correction System ("**DACS**"), and shall track the
              aggregate number of inmates in each of the housing units
              presently used for Restrictive Housing (SHU 17-19;
              MHU 21; HRYCI 2L; BWCI Unit 8; and SCI DDA and
              B-Mod) or other restrictive housing units subsequently
              used (Specified Housing Area). The tracking referenced
              in the foregoing sentence shall reflect the aggregate
              number of inmates within each Specified Housing Area
              that are being held in restrictive housing other than PCO.

      2.      The DOC shall make enhancements to DACS and shall
              track, for each inmate housed in a Specified Housing
              Area, the duration of each inmate's stay in any Specified
              Housing Area. The tracking referenced in the foregoing
              sentence shall reflect, for each inmate, the following
              demographic information, if reflected in DACS: race;
              gender; national origin; physical disability status; age;
              religion and MH status (*i.e.*, NMI, MI or SMI).

      3.      The DOC shall track manually, for each inmate in a
              Specified Housing Area, the number of hours of out-of-
              cell time offered[1] by DOC and out-of-cell time actually
              taken by the inmate for (a) structured therapeutic

---

[1] As used in this paragraph "offered" means hours that are actually offered where
the offer is not nullified.

activities and (b) unstructured recreational activities. The DOC shall provide CLASI with proposed manual tracking forms by August 31, 2016. Subject to additional funding, the DOC shall acquire equipment and make enhancements to DACS to enable it to track electronically the number of hours of out-of-cell time offered and the number of hours taken.

4.  The DOC shall track and maintain an up-to-date list of the non-therapeutic programs that the DOC offers in the Specified Housing Areas.

5.  The DOC shall track the number of inmates determined to have MI or SMI as a result of the DOC's screening and initial evaluation processes.

6.  The DOC shall track the number of inmates on the Roster who are cited for disciplinary violations that could subject the inmate to a sanction of disciplinary housing. The tracking referenced in the foregoing sentence shall also reflect the aggregate number of inmates by institution on the Roster who receive a sanction that includes disciplinary housing.

7.  The DOC shall track the participation rates and identified outcome measures in each of the structured therapeutic programs.

B.  **Reporting Obligations**. The DOC's reporting obligations shall commence as they arise from and after January 15, 2017. The DOC shall have only the following reporting obligations:

1.  The DOC shall provide CLASI with a report on a monthly basis reflecting the information required to be tracked in Paragraphs A.1, A.2., A.5 and A.6. Prior to the contemplated modification of DACS, the reporting required by this paragraph shall be done manually. Until DACS is modified, the manual reporting of information required to be tracked in Paragraph A.2 above will include a narrative description indicating the approximate number of inmates being held in disciplinary housing,

administrative segregation/pre-hearing detention, protective custody, or classification.

2.    The DOC shall provide CLASI with a report on a monthly basis reflecting information required to be tracked in Paragraph A.3. Unless and until the funding condition in Paragraph A.3 is satisfied, the DOC's reporting obligations in respect of Paragraph A.3 will be limited to monthly reports reflecting the results of manual audits of the daily tracking information compiled in accordance with Paragraph A.3. The audits will reflect weekly out-of-cell time data for 20 inmates. Audit targets shall be selected as follows: On the first day of the month CLASI shall use a random number generator to choose a week from the prior month. Using the first count list, or its equivalent, of the Tuesday of the chosen week from the Specified Housing Areas, the parties shall randomly choose 20 inmates by an agreed-upon method. CLASI shall have the right to participate in the audits. If, and as soon as possible after, the appropriations referenced in Paragraph A.3 are received, the DOC will begin reporting to CLASI on a monthly basis all information required to be tracked in Paragraph A.3. The monthly report referenced in the preceding sentence shall include weekly out-of-cell time data for each inmate tracked under Paragraph A.3.

3.    The DOC shall, on a monthly basis, provide CLASI with a list of the programs tracked under Paragraph A.4.

4.    The DOC shall report the information tracked in accordance with Section 1.7 to CLASI on a quarterly basis.

C.    **Termination of Tracking and Reporting Obligations.** The DOC's tracking and reporting obligations under this Agreement and Order shall expire at the end of the term of this Agreement and Order, which term shall be five (5) years from the Effective Date., unless terminated earlier by the Court. After DOC's tracking and reporting show that inmate use of the unstructured recreation per week required by this Agreement and Order has

been sufficient for two years, DOC may move to be excused from having to report hours out-of-cell for unstructured recreation.

#40350723 v1