In the United States District Court
For the District of Delaware

LeRoy Shelley
v.
Warden Dana Metzger

Motion for Finding of Contempt

Filed pursuant to FRCP rule 71

## Procedural History

On August 6, 2015, the Community Legal Aid Society, (CLASI) filed a complaint, CLASI v Coupe, 15-688, GMS, alleging that Robert Coupe, Commissioner of D.O.C. was violating the constitutional rights of prisoners who were mentally ill and housed in Segregated Housing Unit (SHU). On Sep 1, 2016 a settlement was reached in which the D.O.C. agreed to certain stipulations to improve conditions.

## Argument

As of January 16, 2020, the D.O.C. has not complied with the following sections of the agreement at JTVCC:

1. Section 1.N, 1.O
2. Section 2.D
3. Section 3.A
4. Section 3.B

Agreement and order section 1.0 states, 1.M — also — "That D.O.C. will use available space, chairs to conduct programming (1.M), group therapy by November 30, 2016. There are hundreds of inmates in the SHU and not even five percent of them have access to any group therapy, programming despite the prescence of large numbers of mentally ill, seriously mentally ill inmates housed in the SHU. Inmates in building 18 have no access to group therapy or any kind of programming. The only mental health care readily available to inmates in SHU is being able to submit a sick call and have a hurried conversation with a mental health social worker. This entry level worker is responsible for hundreds of inmates, other duties imposed by D.O.C on them.

Agreement and order section 2.d stipulates:
"That inmates in the SHU shall be given 17.5 hours of unstructured recreation. Unstructured recreation includes the following:
1. indoor and outdoor recreation
2. gymnasium
3. religious practices outside the cell
4. library, law library
5. time in the day room with other inmates
6. board games
7. cards
8. reading
9. television or other leisure activities
10. telephone
11. visitation

Inmates in SHU 18 building are taken to a cage (enclosed, chain linked 15x30) also called "a dog kennel", inside in which there is a payphone present for recreation. There are no tables, chairs available and inmates have to stand on their feet for 2½ hours. There are no board games available, no cards, no leisure reading materials or anything inside the cage. These items may not be purchased at commissary either. Inmates may place a phone call but then are forced to stand around idly. When inmates are taken outside there is no activity available except to pace back, forth in a small dog kennel. Gymnasium, law library are not available to hundreds of inmates in the SHU. These inmates are not able to access any provisions for religious practices outside the cell because they cannot attend any type of religious services in the SHU. Inmates in Disciplinary custody have access to nothing and cannot even place a phone call. They cannot even have a religious text book or legal materials, soap may even be confiscated. (ex 1) By denying the inmates in the SHU the right to religious practices, this is a violation of their first amendment right. And the current unstructured activity plan violates their 8th amendment right per standard of agreement, order. Inmates in SHU 17 are similarly situated. Hundreds of inmates have their radio, tv confiscated when they enter the SHU per "quality of life" policy which is supposed to be a priviledge level assigned to diffrent buildings in the SHU. A priviledge is defined in the D.O.C. manual, rulebook as: special events, fundraisers, gym, telephone, commisary visits, outside yard. Further the D.O.C lists prohibited items in the SHU and television, radio are approved items for the SHU.

4

Confiscating property is not a priviledge revocation. Inmates have a right to anything they purchase because the rules state as much. The only area where an inmate cannot have access to his property is when he is housed in the infirmary and disciplinary custody because facility design will not accomodate such.

Agreement and order 3A stipulates:
    That SMI inmates will not be put in disciplinary custody unless absolutely neccesary. Although D.O.C. does not house SMI inmates in the designated area for disciplinary custody they have evaded this directive by placing mentally ill inmates on adjoining housing areas of discipthary custody and removing all of their property. This happens when SMI inmates receive a misconduct, they place them in pre hearing confinement, strip them of their property. (ex 1, 1a) This is in violation of D.O.C. policy 4.2 (ex 3) which states that pre hearing confinement shall not be punitive and should only be used to ensure the safety of inmates, the institutions. The only thing allowed by staff in disciplinary custody now are 2 blankets, 1 sheet, 2 sets of under clothes, 1 washcloth, 1 towel, shower shoes. This is a crafty, cruel practice among staff at J.T.V.C.C. because D.O.C. policy allows for the following:

1. religous book
2. writing paper
3. pen
4. envelopes
5. postage
6. legal materials
7. long johns
8. toothpaste (commisary)
9. toothbrush (commisary)
10. soap dish
11. cocoa butter
12. toothbrush holder

Although allowed to possess the following items just mentioned, D.O.C. staff have continuously degraded inmates by refusing to let them launder soiled sheets, underclothes. (ex 4, 5).

Section 36 stipulates:
That the multidisciplinary team shall review the status of every inmate housed in the SHU every 90 days.

The multidisciplinary team at JTVCC has been reviewing inmates in the SHU every 120 days for over a year now. This a direct violation of the settlement agreement which calls for an inmate to be reviewed every 90 days. This is not only a typically flagrant violation of JTVCC staff but it increases the time inmates spend in the SHU. The institution regularly keeps inmates in the SHU for more than a year and does not submit reports on why to the bureau chief. The SHU also is designed for higher security inmates who would be considered dangerous but the majority of SHU inmates are mentally ill or are inmates with a litany of offenses which would not require long term such as substance abuse, lewdness, unauthorized communication, gambling, etc. Also there are currently over 30 inmates housed in the SHU who do not even have enough points (less than 17) to be classified to maximum security. When consider

Hobbs was asked about why inmates were being classified every 120 days, he stated that "his superiors had instructed him to do such."

### Relief Requested

Pursuant to Rule 71, plaintiff requests enforcement of CLASSI v Coupe, CA 15-688 as a third party beneficiary. (Hook v Arizona, 972 F.2d 1012)

For violations of section, I.M, 1.0

1. The prison has been in violation of this portion of the agreement for over three years which is sufficient to establish defendant's outright disregard for this order. Because of the amount of prisoners affected, the plaintiff requests the court to fine defendant $1,000 for each day that the settlement was violated.

2. That any inmates who were in SHU in this time frame who were denied the benefits of programming available, as well as treatment be awarded good time in the amount of 2.5 days a month for violating their right to have their mental illness treated.

3. That any inmate who was in the SHU in said time frame who complied with the limited programming availabe (program packets) which consisted of

a series of correspondence questions sent by counselor be awarded 2.5 days of good time for the length of their stay in the SHU, because general population inmates are awarded good time for their participation of any programming, treatment.

4. Treatment/programming is shown on institutional network channel on a daily basis and inmates who cannot attend for various reasons (ie, work, medical treatment/status, etc) for their enrichment, benefit can view such. Since prison staff has been negligent for years and plaintiff anticipates further inaction, ineptness, plaintiff requests court to order that inmates housed in SHU be allowed to view such programming and disallow any further confiscating of such items like inmate televisions because of the prisons long track record of inaction, incompetence.

For violations of section 2d

1. Defendants have had available space, resources to accommodate this section of the agreement since it's inception. The gymnasium goes unused in the maximum security housing area as do classrooms which could be used for law library, religous purposes. The housing area in building 18 have no seating in dayroom area, no other structured

8

activity. The only recreation in 2 out of the 5 cages is a payphone. Inmates in building 17 have no meaningful access to unstructured recreation as well. Plaintiff requests relief in the form of an order directing staff to install tables, seating, other unstructured recreation in building 18, direct building 17 to fully comply with section 2.d.

2. Inmates in disciplinary have no unstructured recreation. The plaintiff requests that this cruel, unusual punishment be stopped, that court order that they be given unstructured recreation per order, agreement.

3. Inmates in disciplinary custody have no access to laundry. Plaintiff request court to direct that they be allowed to access laundry.

4. Inmates in SHU have no access to religious practices outside the cell. Plaintiff requests that they be allowed to participate via video link by accessing requisite services on television.

For violations of 3.A

1. The agreement states that seriously mentally ill inmates will not be put in disciplinary custody unless absolutely neccesary. Plaintiff requests that court order staff at JTVCC be ordered to stop placing SMI inmates on prehearing confinement and removing all of their property. (iso status).

2. Direct D.O.C, JTVCC to stop confiscating property from SMI inmates in any status in the SHU with the exception of disciplinary custody.

3. Direct JTVCC staff to comply with D.O.C. regulations regarding cell content in disciplinary status.

4. Direct JTVCC staff to stop confiscating inmates shoes, shoelaces in disciplinary custody, it is not suicide watch.

For violations of 3B

Plaintiff request court to order staff at JTVCC to refrain from reviewing inmates in SHU every 120 days and adhere to the agreed upon 90 days per agreement, order.

10

Plaintiff requests compensatory relief in the amount of $5,000.

Plaintiff requests punitive damages in the amount of $10,000.

Plaintiff requests attorneys fees in the amount of $750.00

Issue a declaratory judgement stating that:

1. Prison has not complied with agreement, order.

2. Issue an injunction ordering defendants to comply with relief requested in 1.M, 1.O within 30 days.

3. Order plaintiffs recovery of good time under relief requested in regards to I.M, 1.O within 30 days.

4. Order defendant to cease and desist from applying "quality of life" policy because said policy is not on file with the state administrative agency which has all other prison policy, rules on file.

Certificate of Service

The request for admissions was served by 1st CLASS mail on January 17, 2020 to Defendant Dana Metzger
JTVCC
1811 PADDOCK ROAD
Smyrna, DE 19977